# GALLOWAY AND McFARLAN v. HOLMES.

If goods be sold on a credit, the vendor cannot, before the credit has expired, maintain assumpsit for goods sold, even though he can prove that the vendee induced him to sell the goods by fraudulent representations.

Fraud does not render a contract *void*, but merely *voidable*, at the option of the defrauded party.

If the defrauded party elect to affirm the contract, he is bound by it in all respects.

If a vendor, having a right to rescind a contract of sale of goods, on account of the fraud of the vendee in making the purchase, brings *indebitatus* assumpsit to recover the price of the goods, he thereby affirms the contract.

Where there is an *express* contract, none can be *implied.*

Where the defrauded party rescinds an *express* contract, he cannot set up an *implied* one and sue the other party thereon.

Payment, by the defendant to the plaintiff, pending an action of assumpsit, of part of the entire demand to recover which the action is brought, is not equivalent, in its effect as an admission of the cause of action, to a payment of money into court.

A law of New York, which would enable a vendor, of whom goods had been purchased fraudulently on a credit, to maintain assumpsit against the vendee for the price of the goods, before the credit had expired, would be a law affecting the *remedy* only, and would not apply so as to enable the vendor to maintain a similar action in this state, to recover the price of goods sold in New York.

But, *held*, on a review of the cases, that such was not the law of New York.

In a suit commenced by writ of attachment under the statute, (R. S. 506,) the plaintiff in the writ cannot declare for a cause of action which did not accrue until after the writ was issued.

CASE certified from Wayne Circuit Court. This suit was commenced by attachment against the defendant as a non-resident debtor, under the provisions of the statute, R. S. 506. The attachment was issued on the 15th day of June, 1839. The declaration was in *indebitatus assumpsit* for goods sold and delivered. Plea, the general issue.

On the trial of the cause at the May term, 1842, it appeared from the deposition of one Lewis W. Clark, that he, as the agent of the defendant, on or about the 9th day of May, 1839, purchased of the plaintiffs, in the city of New York, a bill of goods to the amount of $1931,50. In payment for these goods, a bill of exchange was given, as set forth in the receipt annexed to the bill of goods, and which was read in evidence, as follows:

" New York, 9th May, 1839.
" Mr. L. W. Holmes,
                    " Bought of Galloway & McFarlan,
" 209 bars Swedes Iron and other items amount-
    ing in all to                              $1931,50
" Received his draft, May 9th, at 6 mos,, accepted by
" Sylvanus Holmes, Esq., Utica, N. Y., pay'le at Mechan-
" ics Bank, New York.
      (Signed,)            " *Galloway & McFarlan*."

There was also evidence adduced tending to prove that the plaintiffs were induced to sell the goods, and to receive the bill of exchange in payment, by the fraudulent representations of Clark, the agent of the defendant in making the purchase.

It also appeared, that about a year after the commencement of this suit, the defendant paid one half of the demand to the plaintiffs.

The defendant insisted, on the trial, that the action was premature ; that the goods were sold upon a credit, and that the action was brought before the credit had expired, and therefore could not be sustained.

It was thereupon agreed between the counsel for the respective parties, that the question of fraud should be submitted to the jury who should pass upon it ; and that the point insisted upon by the defendant's counsel should be reserved, and the case certified to this Court for its opinion thereon.

The jury found that the defendant was guilty of fraud in the purchase of the goods, and that the purchase was fraudulent, and assessed the plaintiffs' damages at the sum of $1131,79.

A statement of the above facts was then drawn up and signed by the counsel and certified to this Court by the Presiding Judge, pursuant to their agreement.

*H. H. Emmons*, for the plaintiffs.

The goods having been fraudulently obtained, the contract was void, and an action might be immediately brought upon an implied assumpsit to pay for them. *Manufacturers and Mechanics Bank* v. *Gore and another*, 15 Mass. R. 75; *Young* v. *Adams*, 6 Mass. R. 182; *Wilson* v. *Force*, 6 John. R. 110; *Arnold* v. *Crane*, 8 John. R. 82; *Pierce* v. *Drake*, 15 John. R. 475; 2 Saund. Pl. and Ev. 527; 2 Hall's R. 245; 1 Esp. Cas. 430; *Hogan* v. *Shee*, 3 Esp. Cas. 523; 6 E. C. L. R. 157; *Hill* v. *Perrott*, 3 Taun. R. 274; 1 Starkie N. P. Cas. 20; *Stedman* v. *Gooch*, 1 Esp. R. 3; Chitty on Bills, 196; *Norris* v. *Aylett*, 2 Camp. 329; *Puckford* v. *Maxwell*, 6 T. R. 52. It may be said that these are cases where the note of a third person was taken, and that in such cases no credit is given, but that it is otherwise where the vendee gives his own note; there a credit is given. But a credit is implied, by the vendor's receiving paper payable on time, whether of the vendee, or of a third person. 1 Esp. Cas. 4. In *Wilson* v. *Force*, 6 John. R. 110, this was taken for granted. But in the present case, the acceptance of a *third person* was received in payment.

Fraud vitiates all contracts and renders them complete nullities. Com. on Contr. 65, 66; 2 Kent's Com. 482; 2 Stark. Ev. 340; *Cary* v. *Hotaling*, 1 Hill R. 313. The contract in this case, being absolutely void, the defendant held the goods tortiously. The plaintiffs had a present

right of action either by trover or replevin. The conversion was complete by the fraudulent possession; and whenever a party may bring trespass or trover for goods, he may waive the tort and bring assumpsit. 2 Saund. Pl. and Ev. 525; 1 Chitty's Pl. 113; 1 Saund. Pl. and Ev. 111. The bringing assumpsit is not an affirmance of of the contract. *Biddle* v. *Levy,* 2 E. C. L. R. 277; 6 E. C. L. R. 157, and *Hill* v. *Perrott,* 3 Taun. R. 374, show that if there is a fraudulent special contract, even where the goods are delivered under it, to a third person, the vendor may recover the price of them under the common counts; which could not be the case, if the bringing assumpsit was an affirmance of the particular contract.

Whenever a party may rescind a special contract he may maintain indebitatus assumpsit upon an implied promise for the labor done, the goods delivered, or the money paid under it. 1 Chit. Pl. 380; *Giles* v. *Edwards,* 7 T. R. 181; *Linningdale* v. *Livingston,* 10 John. R. 36; *Gary* v. *Hull,* 11 John. R. 440; *Raymond* v. *Bernard,* 12 John R. 274; 4 Pick. R. 101; 4 Cow. R. 556; *Coon* v. *Greenman,* 7 Wend. R. 121; 4 Wend. R. 285; *Ketchum* v. *Evertson,* 13 John. R. 365; *Clark* v. *Smith,* 14 John. R. 326; *Mead* v. *De Gallier,* 16 Wend. R. 638; *Peltier* v. *Snell,* 12 Wend. R. 388. It may be said that in these cases the credit had expired when the action was brought. But no matter; the objection here is that there is no implied contract where there is an express one; and the cases cited show that such is not the law; they also sustain fully, the ground that whenever a party has a right to rescind the special contract, he may sue on an implied promise.

The contract in this case was made in New York. The law of that state must therefore govern it. By that law, the whole contract was void, and the plaintiffs had a right to bring their action for the price of the goods immediately after they were delivered to the defendant. 2 Kent's

Com. 458, and cases there cited ; Story's Confl. Laws, §§ 242, 262 ; 1 Bing. N. C. 151 ; Story's Confl. Laws, §§ 314, 361, 316, 318, 212, 278, 272, 270, 276, 266, 354, 355.

But in this case, the bill of exchange received in payment for the goods, matured before the filing of the declaration. The following cases sustain the position that a capias may be issued before the maturity of the cause of action : 4 East. R. 7 ; 7 Id. 4 ; 11 Id, 118 ; 1 B. & P. 343.

The payment by the defendant, since this action was commenced, of part of the demand, is an admission of the contract as laid in the declaration, It is equivalent to a payment of money into court.    2 East. R. 132 ; 2 M & S. 112 ; 2 Harr. Dig. 1584.

*T. Romeyn,* for the defendant.

(1.) The action was prematurely brought. The plaintiffs had no right to sue before the credit had expired.    4 East. 152 ; 3 Bos. & Pull. 584 ; 2 Hall's R. 347, and cases there cited by counsel.

(2.) If the plaintiffs elected to consider the sale fraudulent and to sue immediately, the action should have been *trover* or deceit.    By suing in assumpsit for the price of the goods, they affirmed the contract.    Com. on Contr. 210 ; 9 B. & C. 59 ; 17 E. C. L. R. 330 ; 14 Id. 388 ; 19 John. R. 205 ; 4 Paige, 541 ; 15 Mass. R. 156 ; 4 Greenl. R. 319 ; Chit. on Contr. 680, 1, 2, 5.    These cases all decide that assumpsit will not lie.    The following cases show that *trover* will lie : 3 John. R. 233 ; 10 John. R. 172 ; 15 Id. 187 ; 6 Cow. R. 110 ; or replevin : 15 Mass. R. 156 ; 4 Greenl. R. 319.    It is true that some of the New York cases are apparently opposed to this doctrine ; but they are distinguishable from the present.    In cases where goods are sold, *not upon credit as to time,* but entirely upon the credit given to a *particular species of payment,* which is turned out *as cash,* then upon a discovery of

fraud, the price of the goods may be sued for at once. This is the case of *Wilson* v. *Force*, in 6 John. 110. It is similar to a payment in counterfeit bank bills. But if the sale is *made upon time*, then time must be allowed, or the sale must be disaffirmed.

It is further respectfully insisted by the defendant, that if the American cases differ from the English, it is the duty of this Court to adhere to the latter, as the most reliable exponents of the true doctrines of the common law.

' It is no answer to this remark, to say that the contract was made in New York, and that therefore the New York decisions must govern. The present question is merely as to the *form of the remedy*. The plaintiffs insist that they sought a proper remedy by suing for the price of the goods in assumpsit. The defendant says that the remedy should have been by an action sounding in tort. In all such cases, the *lex fori*, the law of the place where the action is instituted, should govern. Story on Confl. Laws, 277, 468. There is no hardship in the consequences resulting from this rule. The plaintiffs might have stopped the goods in *transitu*, or replevied them; or they might have sued in trover or deceit. But if they saw fit to consider the goods as sold, they were bound to adhere to the terms of the only contract under which they were sold.

RANSOM, C. J. delivered the opinion of the Court.

The sole question presented by this case is, whether the action was properly brought, it having been commenced before the credit of six months on which the goods were sold to the defendant, had expired. The plaintiffs contend that, the goods having been obtained from them by the fraudulent representations of the defendant or his agent, the contract of sale on six months credit was utterly void, and the draft given by the defendant in payment a nullity; that they had a right to treat it as mere

waste paper, and bring their action for the price of the goods as though it had never been delivered to them, and as though no express contract touching the sale and purchase of the goods had been shown.

The question involved is one of much practical importance, and has been argued with great zeal and ability by the counsel for both parties. It is one upon which jurists of great learning and experience have differed in opinion; and, anxious in establishing a rule here, to fix upon that one which seemed most strongly fortified by adjudged cases of approved authority, and most in accordance with settled principles, we have given it the most thorough and deliberate consideration which the time at our disposal would allow.

That the original contract between the parties was *utterly null and void*, by reason of the fraud of the defendant, is not, I think, true, to the broad and unqualified extent contended for by the plaintiffs. I understand a contract to be *void*, in a strictly legal sense, only when it can be enforced by none of the parties to it; as, for example, one founded upon a gaming or other illegal consideration. This was a valid and subsisting contract as against the defendant, which the plaintiffs could have enforced, according to its terms and effect, had they elected to do so. It could only be disaffirmed by the plaintiffs, who were the defrauded party. Until they have disaffirmed it, it cannot be said that there was *no contract*, or that the contract was *void*, however fraudulent it might have been on the part of the defendant. It was merely *voidable* at the option of the plaintiffs. I am aware that many of the cases, and of the elementary books, frequently apply the term *void* to the class of contracts to which the one under consideration belongs, but they oftener, perhaps, and certainly with more propriety, employ language which indicates their true character; as, that a party lured into a

Galloway *v.* Holmes.

contract by the fraud of another, may *disregard*, may *disaffirm*, may *treat as void* the contract, &c.   In Chitty's classification of such contracts, he denominates them "contracts *voidable* on the ground of fraud."   Chitty on Contr. 678.

If there was an express contract, none can be implied. It is a well settled principle, that promises *in law*, exist only in the absence of *express* promises.   *Whiting* v. *Sullivan,* 7 Mass. R. 107 ; Chitty on Contr. 25.   In *Touissant* v. *Martinnant,* 2 T. R. 104, where a surety had taken a bond from his principal, and the principal having failed, he had paid the debt, and then brought assumpsit for the money paid, *Buller,* J. held this language :   "Why does the law raise such a promise ?   Because there is no security given by the party.   But if the party choose to take a security, there is no occasion for the law to raise a promise.   Promises in law only exist where there is no express stipulation between the parties."   Again, in *Cutter* v. *Powell,* 6 T. R. 320, Lord *Kenyon* said, that "the rule, that where the parties have come to an express contract none can be implied, has prevailed so long as to be reduced to an axiom in the law."   And Justice *Ashurst,* in the same case said,—"It has been argued that the plaintiff may recover on a *quantum meruit ;* but she has no right to desert the agreement ; for wherever there is an express contract, the parties must be guided by it ; and one party cannot relinquish or abide by it as may suit his advantage."

If, then, as has been shown, the contract for the sale and purchase of the goods was merely voidable at the election of the plaintiffs, and not absolutely void *ab initio,* on account of the fraud of the defendant, this action cannot be sustained ; because, there having existed an express contract, the law will not imply one.

The counsel for the plaintiffs admit, that if there was a

valid contract subsisting between the parties when the action was commenced, it must govern, and the action be founded upon it.

There was such a valid and subsisting contract, unless it was disaffirmed by the plaintiffs, on account of the fraud. Do they not affirm it by suing in this form of action? They answer negatively, and say they reject the contract altogether, and content themselves with showing the goods unaccounted for in the hands of the defendant; insisting that from this evidence the law raises an implied promise to pay for them. This is met by the defendant with proof of an express agreement, by the terms of which his liability to pay for the goods had not accrued when the suit was commenced. To this it is replied that the express agreement was fraudulent on the part of the defendant, and that he cannot set it up as a defence to the just claim of the plaintiffs. But it must be remembered that the defendant does not admit the agreement to be fraudulent. He insists that it is a valid contract, and binding upon both parties. The plaintiffs alledge the fraud, and rely upon it in avoidance of the contract actually made. That they might have disregarded the agreement and sued immediately on discovering the fraud, is undeniable, but I think it is equally clear, that they should have brought their action for the injury occasioned by such fraud. If the purchase on the part of the defendant was fraudulent, he acquired no title to the goods by the purchase, and the plaintiffs might undoubtedly have brought trover for their conversion, or replevin for their return; but by bringing assumpsit they waived the wrong; they alledged a sale and based their right to recover on the sale alone. It was competent for them to do so; but they thereby placed themselves in the exact position they would have occupied had no fraud existed;—that is, they might have recovered upon an implied promise had not an express pro-

mise been shown.   Such an one, however, being proved, they were confined to, and bound by it.

Where the defrauded party rescinds an express contract entered into by him, he cannot set up an implied one, and sue the other party thereon.   Chitty on Contr. 680, '1. A contrary doctrine, it seems to me, would be a violation of settled principles upon the subject of contracts and remedies.   I will review some of the leading cases bearing upon this question.

The first case referred to by the plaintiffs' counsel was the *Manufacturers' and Mechanics' Bank* v. *Gore & Grafton,* 15 Mass. R. 75.   Grafton applied to the bank to know if a note, drawn by the defendants, who were partners, and endorsed by two other individuals whom he named, would be discounted, and being informed that it would, drew the note, signed it for the firm, and, without the knowledge or consent of the payees, placed their names as endorsers upon the back of it.   This note, with two similar ones, all on time, was discounted by the bank, and the proceeds passed to the credit of the defendants.   Grafton soon afterwards absconded, and the bank, learning the forgery, brought their action of general indebitatus assumpsit for money had and received, money lent, &c. against the defendants, although the credit agreed upon had not expired.   Gore, who was entirely innocent of the fraud practised by Grafton, defended the action upon the ground, among others, that the parties undertook to make a special contract, and the notes given were not payable until after the suit was commenced.   But the plaintiffs had judgment, and *Parker*, C. J. in delivering the opinion of the Court, observed that, " upon this point we have no doubt, and we believe the doctrine has been generally received and practised upon in this commonwealth, that where goods are purchased upon a credit, or money borrowed, and the security agreed upon by the

parties, turns out to be of no value, and different from what it was represented to be by the debtor, it may be treated as a nullity; and an action will lie immediately, for the sum it was intended to secure." The counsel for the defendant drew this distinction between that case and the present one;—that in this case there was a distinct agreement for credit, independently of the bills given for the goods, while in the case cited, he insists that the notes were given in payment for the money received by the defendants, without any express agreement for time;—that the plaintiffs, in other words, purchased the notes and paid the money for them. The distinction taken is an obvious one, and one that is generally recognized in the books. It is not, however, quite so clear that the facts in the case of the *Manufacturers' and Mechanics' Bank* v. *Gore & Grafton*, are such as to render the distinction applicable; although, it is true, that *Parker*, C. J., in delivering the opinion of the Court, quoted and relied upon *Stedman* v. *Gooch*, and other kindred cases, where, as we shall hereafter see, the distinction was properly recognized and applied. But another view may be taken of the case of the *Manufacturers' and Mechanics' Bank* v. *Gore & Grafton*, which distinguishes it most clearly from the case now under consideration. The forged endorsements on which the money was obtained from the bank, were absolutely null and void. The plaintiffs never could have recovered upon them;—no more after, than before the maturity of the notes. There was, therefore, no express contract between the parties with regard to the payment, and the money having been received by the defendants, the law implied an agreement on their part to repay it immediately.

In *Wilson* v. *Force*, 6 John. R. 109, the plaintiff sold to the defendant a horse and chaise for $300, and received in payment a note against a third person, which had some time to run. The defendant represented the maker of

the note to be good and responsible, when in fact he, at the time, knew him to be insolvent and worthless. On learning this fraud, the plaintiff offered to return the note, and demanded payment of the defendant for the property, which being refused, he thereupon, before the note received in payment fell due, brought assumpsit for the amount due him, and was allowed to recover. In this case no agreement for credit was shown. It was a sale of the goods, and a receipt of the note in payment. The note proving to be no payment, on account of the fraud of the defendant, the case stood as a naked sale of the property, and, there being no express contract between the parties, the law presumed that the defendant promised immediate payment. The Court in deciding the case used broad and general language. " If," said they, "the special contract be void on the ground of fraud, the plaintiff may disregard it, and bring assumpsit for the goods sold. The taking of the note under a fraudulent misrepresentation was no payment, and any term of credit which the taking of the note may have implied became void." The rule thus stated is unquestionably correct as applied to the facts then before the court, but, in my judgment, it cannot be sustained upon principle, when applied to a contract for the sale of goods made expressly upon a term of credit, irrespective of the security given.

In *Arnold* v. *Crane*, 8 John. R. 82, the plaintiff loaned to the defendant a sum of money, and took his promissory notes for the amount. By a subsequent arrangement between them, the defendant conveyed to the plaintiff certain real estate as security, in lieu of the notes, which were given up to the defendant. The defendant took the deed and agreed to get it recorded, but never did so, and sold and conveyed the land to another. The plaintiff, on discovering the fraud, requested the defendant to return the notes, or the deed, or to pay him the amount due. The

defendant refused to do either; and the plaintiff thereupon brought assumpsit for the money.  It does not appear but that the notes were all due at the commencement of the suit; and the principle now under consideration does not seem to have been at all involved.  It may be remarked, however, that the court, in deciding the case, referred to *Wilson* v. *Force*, and in general terms affirmed the doctrine there laid down.

Another case relied upon by the plaintiffs' counsel, is *Pierce et al.* v. *Drake*, 15 John. R. 475, where the defendant sold to the plaintiff notes and stock of the Otsego Card and Wire Manufacturing Company, and represented the company to be good and solvent, and the stock to be worth from twelve to fifteen per cent above par; when, in fact, the company was insolvent at the time, and the notes and stock utterly worthless, which the defendant knew. By the agreement, the plaintiffs were to pay for the notes and stock in whiskey, and they did so.  Upon ascertaining the insolvency of the company, the plaintiffs offered to return the stock and notes to the defendant, and demanded payment for the whiskey, which the defendant refused.  Whereupon the plaintiffs brought assumpsit for goods sold, &c.  The court again cite *Wilson* v. *Force*, saying "that case is in point to show that a note taken under such circumstances, is no payment.  The fraudulent representations made by the defendant vitiated the whole contract as to the payment."  Certainly so; and the facts showing a clear obligation to pay for the property received, and there being no express agreement as to the time of payment, the law implied one to pay immediately.

In *Corlies et al.* v. *Gardner et al.* 2 Hall's R. 345, the plaintiffs (auctioneers) sold to the defendants a quantity of goods at auction, to be paid for in an approved endorsed note at six months.  The plaintiffs, having delivered the goods, demanded the note, which being refused, they im-

mediately commenced an action for goods sold and delivered. The action was sustained. In this case the credit agreed upon was on condition that the defendants would give the note. They refused to comply with the condition, but retained the goods. There was then of course no agreement for time, and they most manifestly were liable immediately for the price of the goods.

Two cases referred to by plaintiffs' counsel in 1 Esp. N. P. R. 430, and 2 Esp. N. P. R. 523, seem to me to be in point, and to sustain fully the doctrine he contends for. It can only be said of them that they are *nisi prius* decisions, and conflict directly with a decision of the whole court subsequently made.

*Stedman* v. *Gooch*, 1 Esp. N. P. R. 3, does not help the plaintiffs' case. The defendant owed the plaintiff a debt, and transferred to him in payment the notes of a third person, which were worthless. It was held that he might treat the notes as waste paper, and sue for the original debt. Chitty on Bills, 196, is to the same point, citing the last mentioned case and several others.

*Norris* v. *Aylette*, 2 Campb. R. 329 ; *Abbotts and another* v. *Barry*, 2 Brod. & Bing. 369 ; S. C. 6 E. C. L. R. 157 ; *Hill* v. *Perrott*, 3 Taunt. R. 274 ; *Biddle and Lloyd* v. *Levy*, 1 Stark. R. 20 ; *Puckford* v. *Maxwell*, 6 T. R. 52, referred to by the plaintiffs' counsel, do not conflict with the view which I have taken of this case, and do not require particular notice.

The counsel for the defendant, in resisting the plaintiffs' right to recover in this action, insists, (1.) That if there was no fraud, the action was prematurely brought;—the plaintiffs had no right to sue before the credit had expired. The correctness of this proposition is not denied, and is fully sustained by authority. 4 East. R. 152 ; 3 B. & P. R. 584 ; 2 Stark. Ev. 55 ; 2 Hall's R. 347. (2.) If there was fraud on the part of the defendant, and the

plaintiffs elected so to consider it, and sue immediately for the fraud, the action should have been trover, replevin, deceit, or a special action on the case. This position is also admitted, and is fully sustained by the books. 4 Paige's R. 541 ; Com. Contr. 210 ; 15 Mass. R. 156 ; 4 Greenl. R. 319 ; 3 John. R. 233 ; 10 John. R. 172 ; 15 John. R. 187 ; 6 Cow. R. 110 ; 17 E. C. L. R. 330.    (3.) That the contract was voidable merely, at the election of the plaintiffs, on account of the fraud ;—that if they elected to avoid it, the defendant had no right to the goods ; that if they affirmed it, the goods then belonged to the defendant, and he could not have been sued for them until the credit had expired, and that the bringing of this action of assumpsit for the price of the goods is, of itself, an affirmance of the contract.

Several cases were referred to by the defendant's counsel ;—the leading one, however, was *Ferguson and another* v. *Carrington,* the trial of which at *nisi prius,* in 1828, is reported in 3 C. & P. 457 ; S. C. 14 E. C. L. R. 387. The action was assumpsit for goods sold.    Plea,—general issue.    It was proved that the plaintiff, a ribbon manufacturer, had sold to the defendant, a haberdasher, goods, and that the defendant had accepted bills for the price of them, which bills had not become due at the time of the bringing of the action.    The plaintiff's counsel then proposed to call a witness to prove facts going to show that the goods were not bought for the regular purposes of trade, but with the fraudulent intent of selling them directly afterwards at an under price to raise money ; claiming that, these facts being shown, the defendant could not set up as a defence, that the credit had not expired.    This evidence being objected to as inadmissible in an action upon the contract for goods sold, the court decided as follows : " Lord *Tenterden,* C. J.    The plaintiff alledges that the defendant did not buy these goods in the regular course

of trade, but that he bought them for the fraudulent pur-
pose of having them resold at a less price; and the plain-
tiff wishes, as the time of credit has not expired, to aban-
don the contract and prove fraud.   Now this I think he
cannot do, for he cannot treat it as a sale in one view and
reject it in another."   A nonsuit was entered.   On a mo-
tion to set the nonsuit aside, the same Judge held that al-
though the plaintiff might perhaps have been entitled to
maintain an action of trover, yet, if he went upon the
contract, he must take that contract as it actually was,
and must, if he affirmed the contract, affirm it altogether.
On a motion for a new trial in the same case, argued in the
King's Bench, the court gave the following opinion :
*Bailey*, J.   " The plaintiffs have affirmed the contract by
bringing this action.   The contract proved was a sale on
credit, and where there is an express contract the law will
not imply one."   *Littledale*, J.   " At the time when this
action was brought, the defendant was not bound by the
contract between him and the plaintiffs to pay for the
goods.   The plaintiffs claim to recover for breach of the
contract."   *Parke*, J.   " As long as the contract existed,
the plaintiffs were bound to sue on that contract.   They
might have treated that contract as void on the ground of
fraud, and brought trover.   By bringing this action they
affirm the contract made between them and the defen-
dant."   9 B. & C. 59 ; 17 E. C. L. R. 330.

The law of this case is affirmed expressly by Chitty in
1 Chit. Pl. 157, and in Chit. on Contr. 680, '1.   In Per-
kins' edition of the last mentioned work, published in 1842,
in support of the principle that bringing assumpsit is an
affirmance of the express contract, if one exists, reference
is made to the case of *Solway* v. *Fogg*, 5 Mees. & Welsb.
81, which is stated thus—" Where A engaged to convey
away certain rubbish for B, at a specified price, under a
fraudulent representation by B, as to the quantity of the

rubbish, it was held that he could only recover the specified price, and could not rescind the contract and then sue for the real value of the work performed by him."

These authorities bear directly upon the question under discussion. *Ferguson and another* v. *Carrington*, is an exact parallel to the present case, and if decided upon sound principles, as I think is conclusively shown by a careful examination of all the authorities, it certainly places this case beyond controversy.

The doctrine established by the numerous cases which were cited by the plaintiffs' counsel to show that whenever a party may rescind an express contract, he may sue and recover upon an implied one, is not applicable to the case now before us. What is the rescision of a contract? In the cases referred to, and so in the books generally, it imports an entire abandonment of a contract by one party, on account of some act done, or omitted to be done, by the other, which puts it out of the power of the one or the other, to perform it according to its terms. As if, on an agreement to buy a horse or other chattel, the price be paid, and the chattel is to be delivered on a subsequent day, and before that day arrives, the vendor sells the chattel to another. In such case, the buyer need not wait until the time fixed for the delivery of the thing purchased, but he may rescind immediately, and sue for the price paid. The rescision of a contract implies its prior existence and validity. If we suppose the contract between these parties to have been valid when entered into, what act has the defendant since done or omitted, that would justify the plaintiffs in rescinding it? None whatever.

A party is permitted to rescind an agreement, and bring his action to recover back money paid, or goods delivered under it, not on the ground that the contract was void in its inception, but upon the ground that the parties have both abandoned it. The one is presumed to have done

so by failing to perform some condition, or by depriving himself of the power to perform it; and the other in fact rescinds on account of such act or neglect. But what is the effect of such a rescision? Does it enable the party rescinding to enforce the original agreement? By no means. Suppose that A buys of B for $50, a horse worth $100, and pays the $50 in hand, and B undertakes to deliver the horse in ten days, but before that time sells him to another. What is the remedy of A? He may, if he elect, rescind the contract and bring assumpsit,—and for what? The price paid, and that only. He may restore himself to his original position. Is here any conflict with the rule that the law implies no promise where the parties have made an express one? None whatever. There is no express contract in the case supposed to repay the price of the horse, and both parties having impliedly abandoned the contract for the sale and purchase, the one holds $50 in money belonging to the other, which he is bound to repay, and the law will presume that he promised to do so. But if the buyer does not choose to rescind the contract, he may, after the time fixed for the delivery, bring his action upon the case, declare upon the contract, and recover the value of the horse. Suppose again that B should take a stipulation from A, that he would deliver the horse at a time specified, or repay the purchase money in six months thereafter. And suppose further, that A should fraudulently induce B to make the contract, and to advance the price, intending at the time to sell the horse, and afterwards selling him to another. Could B in such a case rescind the agreement, and bring assumpsit immediately for the price paid? It seems to me that clearly he could not. He might disaffirm it, and recover his just damages, in an action on the case for the deceit, but if he would waive the fraud and sue upon the contract, he must abide by the contract as made.

It appears from the case reserved, that part of the demand was paid by the defendant to the plaintiffs, about one year after the commencement of the suit. The plaintiffs insist that such payment is an admission of the contract as declared upon;—that it is equivalent to the payment of money into court. We think otherwise. It is sufficient, perhaps, to say that it was not a payment of money into court. We may add, however, that the payment appears to have been made many months after the defendant's debt had become due, as recognized and insisted on by him. Such a general payment of money to the plaintiffs would furnish no evidence that the defendant considered the contract first made with them at an end, and the one declared upon substituted for it.

It was also contended by the plaintiffs, that the law of the place where the contract was made, must govern this case; and, inasmuch as by the law of New York, where the goods were sold, the transaction was void for the fraud of the defendant, and a present right of action for the price of the goods vested in the plaintiffs, this Court will recognize that right, and administer the law of New York.

There is no doubt, that the law of the place, is the law of the contract. But the question is not now what right the plaintiffs acquired by the contract. It is admitted that as soon as the fraud was discovered, they had a right to disregard the contract, and sue immediately for the goods or their value. The difference here is, as to the remedy, —the form of action.

Suppose the state of New York had provided by their law a new remedy for this class of cases, and excluded all others,—a remedy unknown to our laws. Would our courts administer such remedy, as part of the law of the contract? Or, suppose our own legislature had abolished the action of general indebitatus assumpsit;—could it be resorted to by these plaintiffs, because their contract would

Galloway *v.* Holmes.

be enforced by such action in the state of New York? I apprehend neither proposition will be seriously affirmed.

The counsel for the plaintiffs themselves seem not to have considered the form of the remedy, as part of the contract. They have commenced their action by a special proceeding *in rem*, entirely unknown to the laws of New York, and which, but for our own statute, they could not have resorted to at all.

The numerous authorities cited upon this point, by the plaintiffs, all sustain the view we have taken of this question. They show conclusively, that the form of action is governed entirely by the law of the country where the action is brought. Whatever is of the substance of the contract, is controlled by the law of the place where it was made. "It is," says Justice *Story*, "universally admitted and established, that the forms of remedies, the modes of proceeding, and the execution of judgments, are to be regulated solely and exclusively by the laws of the place where the action is instituted." Story's Confl. of Laws, 468. The *Bank of the United States* v. *Donnally*, 8 Pet. R. 361, sifts the whole doctrine upon this subject to the very bottom, and puts this question entirely at rest.

But, were we governed by the law of New York, I do not think the result would be varied; none of the New York cases have gone the length necessary to sustain this case. We have seen that they are all clearly distinguishable from it.

Another, and the last question presented for our consideration is, whether the filing the declaration *after* the term of credit agreed upon had expired, and the cause of action had accrued, was sufficient to entitle the plaintiffs to recover. We were referred to several English cases, to show that a *capias* may issue before the cause of action has accrued. These cases arose in the Court of King's Bench. The question they decide is not whether

a suit may be commenced before the cause of action has accrued; they assume that it cannot; but the point considered is, as to what shall be deemed the commencement of the suit. And they decide that it is the filing the bill of Middlesex, and not suing out the *latitat* or writ. If the filing the declaration in actions commenced by attachment, under our statutes, be the commencement of the suit, the authorities referred to are directly in point; otherwise not at all. By our statute, "all civil actions, except those founded on *scire facias*, or other special writs, or, excepting as herein after provided, (referring to the commencement of suits by declaration,) shall be commenced by original writ." R. S. 418, § 2. How are actions, founded on those special writs, commenced? By the writs themselves, unquestionably. Such is the obvious construction of the language of the statute, in reference to writs of attachment. Such is the construction it has uniformly received, and we perceive no reason for giving it a different one now. The act which authorizes a creditor to proceed against the property of his debtor in this form, provides that such creditor, or some person in his behalf, shall make and file with the clerk of the proper circuit court, an affidavit, stating that the defendant against whom the attachment is requested, is justly indebted to such creditor in a certain sum, and that the same is due upon a contract, &c. Without deciding in this case whether or not creditors, other than the original plaintiff in attachment, may file declarations upon causes of action which had not accrued at the time the writ was sued out, we feel no hesitation in determining, that the plaintiff must have a cause of action existing at the time of filing the affidavit, and suing out the writ.

The opinion of this Court, then, upon the question reserved, and to be certified to the Circuit Court for the county of Wayne, is, that inasmuch as the goods men-

tioned were sold by the plaintiff to the defendant, upon a credit, and the term of the credit agreed upon had not expired at the commencement of the suit, this action of assumpsit for goods sold does not lie to recover the price of the goods. It was prematurely brought.

GOODWIN, J. did not participate in the decision, the cause having been argued before he took his seat upon the bench.

*Certified accordingly.*