STEVENS, *Ex'r,* *v.* UNDERHILL *et a.*

A testator's intention, proved by competent evidence, is his testament, and will fail of effect only when it violates some established rule of law.

Such evidence of intention is not required to come from any given source, or to be of any given weight, if it is relevant to the issue. It may include various inherent probabilities and the probative force of many circumstances, as well as the literal sense of the words used.

The law prefers equal distribution to unequal, and in cases of doubt the construction is to be as conformable as possible to the general rules of inheritance.

The general intent of the testator, as gathered from the whole will or other competent evidence, is not to be defeated by language of doubtful meaning contained in a single clause, nor by technical rules which relate merely to the construction or position of words.

" Estate," when used to designate the property which a person leaves to be divided at his decease, includes debts as well as assets; and the presumption is that a testator uses the term "residue" as signifying that portion of his estate which may be left after the payment of charges, debts, and particular bequests, unless a contrary intention clearly appears.

The fact that a testator, after a large special bequest to his wife, gives to her one third part of the residue of his estate, and in the clause following gives to his two children the remainder of his estate after the payment of his debts, is not sufficient evidence that he intended to exempt the wife's third from its proportionate share of the debts, when it is contrary to the whole scheme of the will, and would result in great inequality and hardship.

---

* See note at beginning of opinion.

BILL IN EQUITY by the plaintiff, as executor of the will of Frederick B. Underhill, for instructions as to what portion of the estate each of the legatees is entitled to receive under the following provisions of the will: " First, I give and bequeath unto my beloved wife, Sarah A. Underhill, the sum of twenty-five hundred dollars, as a token of my appreciation of her care and kindness to me in my sickness. I also give, devise, and bequeath unto my said wife one third part of the residue and remainder of all my estate, to have and to hold the same to her and her heirs forever, including all my household furniture and effects. Second, as to the remainder of all my estate, after the payment of all my just debts and funeral expenses, I give, devise, and bequeath the same unto Henry W. Stevens, of said Concord, to have and to hold the same in trust for the equal benefit of my two children, Frederick T. Underhill and Iva Bell Bingham, wife of Edward A. Bingham, of East Boston, Mass.; and I hereby authorize my said trustee to hold, invest, and manage said remainder of my estate in such manner as he shall deem for the best interest of my said children, and to pay over to them the income thereof in equal portions at such time or times and in such sums as he may think best for them. And I also authorize my said trustee to pay over to them, or either of them, in equal portions, the whole or any part of the principal of said remainder, whenever in his opinion they or either of them may need the same, or it will benefit them to receive it: my intention is to give my said trustee such authority to dispose of the income of the bequest made to my children and of the principal as shall enable him to secure their support and comfort in sickness and in health in the best manner."

Sarah A. claims that she should receive, first, the sum of $2,500, and then a sum equal to one third part of the balance of the gross amount of the property; while Frederick and Iva claim that Sarah is entitled to receive, first, $2,500, and then one third part of the remainder of the estate after the payment of the funeral expenses, debts, and expenses of administration, and that they are each entitled to receive an equal amount with her after the payment of the $2,500.   Frederick and Iva are the testator's legal heirs.

The estate was appraised at $37,668.64, but the stock in trade was sold at a loss of $6,080, and there will be a shrinkage of $2,500 from bad debts.   The debts against the estate, as allowed by the commissioner, amount to $7,802.79.

Sarah A. was the testator's second wife, and not the mother of his children.

*Plaintiff, pro se.*

*Leach & Stevens,* for F. T. Underhill and Iva B. Bingham.

*Chase & Streeter,* for Sarah A. Underhill.

BLODGETT, J.   The end to be attained in interpreting a will is
to effectuate the testator's intention as indicated by the weight of
competent evidence, which is not required to come from any given
source, or to be of any given weight, if it is relevant to the issue.
" The whole will must be taken together, and such construction
be put upon it as will carry into effect the purposes the testator
had in view " (*Claggett* v. *Hardy*, 3 N. H. 147, 151); and this
construction does not depend upon the order of sentences, or the
part of the instrument where qualifying or restrictive words are
found.   *Drew* v. *Drew*, 28 N. H. 489, 495.

So far as the intention of the present testator is concerned, it is
plain that in the making of his will he had two leading objects in
mind,—first, to reward his wife for her care of him during his sick-
ness ; and, second, to place the children's portion of his property in
the hands of a trustee.   With these objects in view, and taking into
account the nature and situation of his property, his relation to
those he intended to benefit, and all the material surrounding cir-
cumstances (*Goodhue* v. *Clark*, 37 N. H. 525, 533, and authorities
cited; *Morgan* v. *Dodge*, 44 N. H. 255, 263 ; *Gardner* v. *Webster*,
64 N. H. 520, 521), the testator would naturally make to his wife
a special bequest of the excess he intended she should receive above
her proportionate share of his estate, and then divide the remain-
der proportionately between her and the children.   Nothing would
seem more natural for him to do, and, looking at the whole
scheme of the will, we have no reasonable doubt that this was what
he intended to do; nor do we find anything in the language of the
instrument itself which precludes the fulfilment of this intent,
and without violating any cardinal principle of construction.   The
law prefers equal distribution to unequal (*Passmore's Appeal*, 23
Pa. St. 381 ; *Horwitz* v. *Norris*, 60 Pa. St. 261) ; and although a
testator may discriminate between the objects of his bounty, and
give to one a share of the gross amount of his estate and to
another a share of the net amount only after deducting debts and
charges, yet the presumption is against such an intention, and a
will will be construed in accordance with such presumption in the
absence of a clear manifestation of such intention.   *Willcox* v.
*Beecher*, 27 Conn. 134.

The only manifestation of such an intention on the part of this
testator is found in the second clause of his will, wherein he gives
the remainder of his estate, after the payment of his just debts
and funeral expenses, to his children.   But we do not regard this
as of controlling importance, and especially under the circum-
stances of the case.   The residuary bequest was apparently divided
into two sections simply because the testator desired the share of
the children to be held in trust; and therefore the significance of
the words " after the payment of my just debts," etc., may well be
held to be no greater from their position in the bequest to the
children, than it would have been if they had been contained in

the bequest to the wife.  *Drew* v. *Drew*, 28 N. H. 489, 495.  The local position of these words alone is not sufficient to show that the testator intended to charge the payment of his large indebtedness ($7,802.79) and funeral expenses upon the children's share. *Wallace* v. *Wallace*, 23 N. H. 149, 156 ; *Drew* v. *Drew, supra*.  At most, the testator's intent is left in doubt, and when this is so the construction is to be as conformable as possible to the general rules of inheritance.   *France's Appeal*, 75 Pa. St. 220, and authorities generally.   The general intent of the testator, as gathered from the whole will and other competent evidence, is not to be defeated by language of a doubtful and uncertain meaning contained in a single clause ( *Williams* v. *Bradley*, 3 Allen 270, 279, 280 ; *Baxter* v. *Baxter*, 122 Mass. 87, 89), nor by technical rules which relate merely to the construction or position of words. *Wallace* v. *Wallace* and *Drew* v. *Drew, supra ; Covenhoven* v. *Shuler*, 2 Paige 122, 130, and authorities cited.   On the contrary, effect, if possible, will be given to the main and leading purpose of the testator without laying great stress upon particular expressions or detached clauses, say numerous decisions ; and especially is this so where, as in this jurisdiction, the question of the testator's intention is determined as a question of fact by the natural weight of competent evidence of all kinds, and not by artificial rules of interpretation invented and applied by an exercise of judicial power.   *Brown* v. *Bartlett*, 58 N. H. 511 ; *Wilkins* v. *Ordway*, 59 N. H. 378, 382; *Kimball* v. *Lancaster*, 60 N. H. 264, 273 ; *Goodale* v. *Mooney*, 60 N. H. 528, 535 ; *Sanborn* v. *Sanborn*, 62 N. H. 631, 640, 643, 644.*

The position and wording of the provision under consideration are therefore properly to be regarded only as evidentiary facts upon the question whether the testator intended to cast his debts upon his children ; and upon this question no one kind of evidence is conclusive.   Giving to these facts the weight to which they are justly entitled, nevertheless, in view of the testator's purpose, gathered from the will as a whole, in connection with the amount of his property, his large indebtedness, the relation to him of the objects of his bounty, the great inequality which would otherwise result, and the many inherent probabilities of the case, we are constrained to hold that the provision does not have the effect to

---

* *Kennard* v. *Kennard*, 63 N. H. 303, 310; *Wiggin* v. *Perkins*, 64 N. H. 36, 38; *Silsby* v. *Sawyer*, 64 N. H. 580, 585; *Kimball* v. *Bible Society*, 65 N. H. 139, 150; *Edgerly* v. *Barker*, 66 N. H. 434, 447.  "Contracts, wills, and statutes are the makers' intentions, proved by competent evidence.  . . .  The evidence of intention may include various inherent probabilities and the probative force of many circumstances, as well as the literal sense of the words used. When the meaning is found by giving due weight to everything that legally tends to prove it, it is not a matter of discretion whether it shall be adopted or rejected."  *Opinion of the Justices*, 66 N. H. 629, 651;—and see 66 N. H. 650, 652–661.

exempt the residuary bequest to the wife from the proportionate charges and expenses to which it would otherwise be liable. And this construction not only effectuates the testator's purpose and relieves against inequality and hardship, but it is also consistent with his language; for "estate," when used to signify property which a person leaves to be divided at his death, includes indebtedness as well as assets, and the ordinary meaning of "residue" as used in wills is, that portion of an estate which is left after the payment of charges, debts, and particular bequests. *Phelps* v. *Robbins*, 40 Conn. 250; *Graves* v. *Howard*, 3 Jones Eq. 302. "The presumption is that a testator uses it in this sense, unless a contrary intent clearly appears" (*Phelps* v. *Robbins*, *supra*); and in the present case it does not so appear.

After the payment of the funeral charges, debts, expenses of administration, and the special legacy to the widow, the remainder of the estate is to be equally distributed to the three legatees.

*Case discharged.*

ALLEN, J., did not sit: DOE, C. J., and STANLEY, SMITH, and CLARK, JJ., concurred.

CARPENTER, J., *dissenting*. The interpretation of a will is the ascertainment of the testator's expressed intention. The question is not what he meant, but what is the meaning of his words. His unexpressed intention, however shown, is immaterial. A contrary doctrine would repeal the statute requiring wills to be in writing.

Many so-called rules of construction are properly rules of law, as, for example, the rule in *Shelley's case* (2 Jar. Wills 241; Fear. Rem. 188; *Crockett* v. *Robinson*, 46 N. H. 454, 461), and the rule that a devisee of lands, without words of limitation, takes only an estate for life. 2 Jar. Wills 170. They are not applied to discover the intention, but to establish rights of property. Hawk. Wills, Preface vii; 4 Kent 535; *Doe* v. *Fleming*, 2 C. M. & R. 638, 654. The often acknowledged and regretted defeat of the testator's intention has been due generally, if not always, to the application of rules of this character, and not to rules for finding the intention. *Loveacres* v. *Blight*, Cowp. 352, 355; *Denn* v. *Gaskin*, Cowp. 657, 659; *Right* v. *Sidebotham*, 2 Doug. 759, 763; *Denn* v. *Mellor*, 5 T. R. 558, 561; *Doe* v. *Clarke*, 2 N. R. 343, 348, 349; *Denn* v. *Page*, 1 B. & P. 261 *n.*; *Goodtitle* v. *Otway*, 1 B. & P. 576, 582; *Doe* v. *Dring*, 2 M. & S. 448, 454; *Langham* v. *Sanford*, 2 Mer. 6, 24; *Hodgson* v. *Merest*, 9 Price 556, 576, 577; *Byrom* v. *Brandreth*, L. R. 16 Eq. 475, 478; *Bellairs* v. *Bellairs*, L. R. 18 Eq. 510, 517; *Dorin* v. *Dorin*, L. R. 7 H. L. 568; *Cunliffe* v. *Brancker*, 3 Ch. Div. 393, 399; *Harrison* v. *Jackson*, 7 Ch. Div. 339, 341; *Ellis* v. *Houstoun*, 10 Ch. Div. 236, 241, 243.

Rules ·of interpretation do not control, but are subservient to the intention. They are rejected as inapplicable wherever they " would defeat instead of promoting the object for which " they " are framed." *Blundell* v. *Gladstone,* 1 Ph. Ch. 279, 286. They always contain " the saving clause ' unless a contrary intention appear by the will.' " Hawk. Wills, Preface vii. From the earliest to the latest judicial decision on the subject it has uniformly been held that to the testator's expressed intention all rules for finding it must bend. Plow. 161, 162, 413; 3 Co. 20 b; 8 Co. 95 b; *Hodgson* v. *Ambrose,* 1 Doug. 337, 341; *Ralph* v. *Carrick,* 11 Ch. Div. 873, 886; *Megson* v. *Hindle,* 15 Ch. Div. 198, 202; *Kennon* v. *M'Roberts,* 1 Wash. Va. 96, 101, 102; *Roy* v. *Garnett,* 2 Wash. Va. 9, 31. Many of them are merely the conclusion reached by reason and common sense in the cases to which they apply (1 Pow. Cont. 370), as, for example, the rules, that, if possible, effect is to be given to every word; that words having as they stand a sensible meaning consistent with the rest of the will cannot be rejected or transposed; and that they must be given their natural and ordinary significance unless it appears from the context or other evidence that they are used in a different sense. Had they never been formulated, their precepts would none the less be observed.

Many questions are questions of law in one aspect, and of fact in another. Sedg. Stat. Law 193; *State* v. *Hayes,* 61 N. H. 264, 330. That a deed must bear a seal is in one view a proposition of law, and in another a statement of fact. What the law is may be strictly a question of fact, as, for example, the law of foreign jurisdictions (Sto. Conf. Laws, *ss.* 637, 638), customary law (Broom Leg. Max. 882, 890; *Carvick* v. *Vickery,* 2 Doug. 653, 654, *n.*), and even statutory law. *Opinion of the Justices,* 35 N. H. 579; *Opinion of the Justices,* 52 N. H. 622. All questions of law are in one sense questions of fact. They are determined as questions of fact by the natural weight of the evidence competent to be considered. The decisions of courts, the " works of sages in the profession," maxims, usage, and arguments drawn from necessity, convenience, or inconvenience and other sources, are evidence of the law. 1 Bl. Com. 71–73; Co. Lit. 110 b., 115 b.; Broom Leg. Max. xii, 184; 1 Kent 473, 498.

In ascertaining a testator's intention, nothing can be considered except the words of his will, and legitimate evidence tending to show what he understood them to mean. His intention, found upon competent evidence, is necessarily his expressed intention. Hence the proposition, that in the interpretation of a will the question of intention is determined as a question of fact by the natural weight of competent evidence and not by artificial rules of interpretation (*Brown* v. *Bartlett,* 58 N. H. 511; *Kimball* v. *Lancaster,* 60 N. H. 264), may be strictly accurate. But it is liable to mislead. Without " the constant explanation that " the

intention " is to be sought in his words and a rigorous attention to them," it is " apt to lead the mind insensibly to speculate upon what the testator may be supposed to have intended to do, instead of strictly attending to the true question, which is what that which he has written means." *Abbott* v. *Middleton*, 7 H. L. Cas. 68, 114. Its design is not to abolish the standard rules of interpretation, and substitute in their place " what may, not irreverently, be called guessing as to what the words " mean (*In re Ingle's Trusts*, L. R. 11 Eq. 578, 587), or to propound a new canon of construction. Courts have always professed to determine the question of intention by the weight of evidence—sometimes called arguments, reasons, considerations, *indicia* (11 H. L. Cas. 368) or indications—deemed by them competent to be considered, and have uniformly held that to the intention shown by the evidence all rules of construction are subordinate. If, as there is some reason to believe,\* the impression anywhere prevails that it lays down a doctrine of interpretation differing in any material respect from that which has always obtained, the impression is erroneous. It is intended to be, and properly understood it is, merely a concise enunciation of the doctrine, as ancient as the statute of wills, that to the intention shown by the evidence all rules for finding it must yield. Well-nigh numberless equivalent expressions are found in the reported cases. A few of them are cited in the margin.†

The natural desire of the interpreter of a will to effectuate a just and rational disposition of the property rather than one that

---

\* See *Bills* v. *Putnam*, 64 N. H. 554, 558, 559.

† Plow. 161, 162, 343, 344, 413, 522; *Boraston's Case*, 3 Co. 20 b; *Manning's Case*, 8 Co. 95 b; *Inchley's Case*, 2 Leon. 43; *Blamford* v. *Blamford*, 3 Bulst. 98, 103, 104, 107; *Spalding* v. *Spalding*, Cro. Car. 185; *Petty* v. *Goddard*, O. Bridg. 35, 39, 40; *Holmes* v. *Meynel*, T. Jones 172; *Bridgwater* v. *Bolton*, 1 Salk. 236, 237; *Cowper* v. *Cowper*, 2 Peere W. 720, 741; *Smith* v. *Packhurst*, 3 Atk. 135, 136, Lord Ch. *Hardwicke* in *Bagshaw* v. *Spencer* (2 Atk. 570) as reported in Cun. Dict., tit. Will, 8; *Doe* v. *Laming*, 2 Burr. 1100, 1112; *Molyneux* v. *Scott*, 1 W. Bl. 376–378; *Roe* v. *Grew*, 2 Wils. 322–324; *Gulliver* v. *Poyntz*, 3 Wils. 141–143; *Doe* v. *Underdown*, Willes 293, 296, 297; Lord *Mansfield* in *Perrin* v. *Blake* (1 W. Bl. 672—4 Burr. 2579) as reported in 6 Cr. Dig. 319; *Blackstone*, J., in the same case, 6 Cr. Dig. 321, 322; 2 Bl. Com. 381, *note* (13) by Christian; *Hodgson* v. *Ambrose*, 1 Doug. 337, 341, 342; *Griffith* v. *Harrison*, 4 T. R. 737, 749; *Burnsall* v. *Davy*, 1 B. & P. 215, 220; *Blundell* v. *Gladstone*, 1 Ph. Ch. 279, 285, 286; *Morrall* v. *Sutton*, 1 Ph. Ch. 533, 545–551; *Grey* v. *Pearson*, 6 H. L. Cas. 61, 78, 99, 106, 108; *Thellusson* v. *Rendlesham*, 7 H. L. Cas. 429, 504–506; *Comfort* v. *Brown*, 10 Ch. Div. 146, 150; *Ralph* v. *Carrick*, 11 Ch. Div. 873, 885, 886; Dwar. Stat. 552, 553; *Kennon* v. *M'Roberts*, 1 Wash. Va. 96, 101–103; *Roy* v. *Garnett*, 2 Wash. Va. 9, 31; *Smith* v. *Bell*, 6 Pet. 68, 75, 80; *Clarke* v. *Boorman*, 18 Wall. 493, 502, 503; *Giles* v. *Little*, 104 U. S. 291, 293, 294; *Blagge* v. *Miles*, 1 Story 426, 445, 448; *Jackson* v. *Myers*, 3 Johns. 388, 395; *Lytle* v. *Beveridge*, 58 N. Y. 592, 598, 599; *Malcolm* v. *Malcolm*, 3 Cush. 472, 477; *Quincy* v. *Rogers*, 9 Cush. 291, 294, 295; 4 Kent 534.

is apparently unjust and irrational, is liable to lead him to over-
look the sense of the written words, and to mistake for the ex-
pressed intention what he conceives must have been the testator's.
intention in fact. If the language used is ambiguous, the fact
that one construction leads to reasonable and another to unreason-
able results is evidence, and may be decisive that the former con-
struction truly expresses the intention. But if the language is.
free from ambiguity, the unequivocal meaning of the words as they
stand must be given effect, however unreasonable or absurd the
result may seem to be. If courts could look into the heart and
mind of the testator, see with his eyes, feel as he felt, and think as
he thought, provisions that appear to them unnatural and irra-
tional would often present an altogether different aspect. Upon
no subject do men differ more widely than in the disposition of
their estates at their death. Many whose testamentary capacity
cannot be questioned make wills that seem to be unnatural and
unjust to one or more members of their families. But no one can
put himself in the testator's place. No one can know the motives
that actuated him; his feelings towards his wife, children, and other
kindred; his views of their necessities and deservings,—or any of
the multitude of considerations that might justly move him in the
disposition of his estate. Any conjecture concerning them, how-
ever plausible or probable it may seem, and any finding of the
intention founded thereon, or not founded exclusively upon the
words of his will and evidence tending to show what he under-
stood them to mean, are more likely to be wrong than right.
*Brewster* v. *Edgerly*, 13 N. H. 275, 277, 278.

Argument drawn from the general scheme or purpose of a will,
says Lord Ch. *Selborne* in *Giles* v. *Melsom*, L. R. 6 H. L. 24, 31, is
"a perilous and hazardous argument in most cases where it is
used. I do not say that there are not cases in which it may be
properly used, but certainly it is an argument which seeks to
escape from the necessity of grappling with the meaning of par-
ticular words upon grammatical principles, and endeavors to get
into a region of speculation as to the probable intent of the testa-
tor." Here there is no room for this argument. The only gen-
eral or leading purpose of the testator disclosed by the will is, to
give a part of his property directly to his wife and a part to a
trustee for his children. This general intent affords no aid in
determining the question whether the debts are chargeable partly
on the devise to the wife, or wholly on that to the children. It is
equally consistent with either view.

The expression "the residue and remainder of all my estate "
in the first clause cannot be construed to mean exactly the same
as "the remainder of all my estate after payment of all my just
debts and funeral expenses" in the second clause. If the testator
intended his bounty to his wife to bear a portion of the burden of
his debts, he would have inserted after "estate" in the first clause

the words "after payment of all my just debts and funeral expenses." These words in the place where they are found are entirely without meaning if they do not charge the debts upon the devise to the children. The will cannot be construed to mean precisely the same as if these words were omitted. Reason and common sense require the application of the wholesome doctrine of the ancient rule, that effect, if possible, is to be given to every word, and would require it if no such rule existed.

In order to give to the will the effect claimed by the children, the words "after the payment of all my just debts and funeral expenses" must be either stricken out, or transposed from the second to the first clause. The court can do neither. The will is intelligible and sensible as it stands. Every word has a plain, rational, unambiguous meaning, consistent with the general tenor of the will and with all the circumstances disclosed. The testator could not have selected more apt and explicit words to express and give effect to his intention to charge his debts wholly upon the devise to his children. To reject or transpose words which as they stand have a rational meaning consistent with all the words of the will, is not expounding the will, but making a new one. *Hall* v. *Hall*, 27 N. H. 275, 288. "I do not know how we can transpose words that are good sense. If the will was nonsense, then we may transpose to make it bear a meaning; but to displace the words of the will when they are intelligible is to alter the will and the sense of it." *Holt*, C. J., in *Cole* v. *Rawlinson*, 1 Salk. 234, 236; 1 Red. Wills 467, 468. This rule of interpretation has been reiterated and enforced in a multitude of cases. But if it had never hitherto been heard of, it would be the duty of the court to announce the doctrine and apply it here.

The will carries internal evidence that the writer of it was acquainted with the law and with the rules of English grammar. He did not insert after "estate" in the first clause the words "after the payment of said legacy," because he knew they were grammatically superfluous. He did not insert in that clause the words "after the payment of all my just debts and funeral expenses," because he was instructed that the debts and funeral expenses were to be a charge on the devise to the children. It is incredible that for any other reason he omitted them in the first clause and inserted them in the second. He left no room for the suggestion of probabilities or for presumptions. Doubting, apparently, what meaning might be attributed to "estate," standing alone, he took care to show by qualifying words clearly and unmistakably the sense that must be given to it here.

Various extrinsic facts, as that the children are of mature age, that the wife is a second wife and not their mother, the value of the estate and amount of the debts, have been urged in argument. They are entitled to no weight. They are equally consistent with either construction of the will. It was the testator's right to dis-

pose of his property as he thought best. He might have given it all to his wife. It was for him to decide what justice to her and to his children required of him. The measure of his regard for his wife and for his children, his views of their necessities and deserts, and his motives for placing his bounty to his children not in their control but in the hands of a trustee, to be doled out to them as in his judgment their needs may require, cannot be known except as they are shown by his will. Conjecture or speculation regarding them is unprofitable and dangerous. It is "better to construe a will as it is, and to assume that it is as it was intended to be." _Doe_ v. _Taylor_, 10 Q. B. 718, 723.

---

STRAFFORD, DECEMBER, 1889.