Rockingham, ¿
Dec. 2, 1930. ∫

WILLIAM E. MARVIN, *Adm'r, c. t. a., v.* JOSEPH P. PEIRCE & a.

*Marvin, Peyser & Tucker*, for the plaintiff.

*William E. Marvin, pro se* as the representative of the estates of certain of the brothers and sisters.

*Thomas H. Simes* and *Charles H. Batchelder* (*Mr. Simes* orally), for certain interested parties.

*Charles M. Dale*, for J. Winslow Peirce, a nephew of the testator.

ALLEN, J.   The will gives the brothers and sisters each a one-fifth interest subject to Mary's life estate and subject to the limitation of survivorship.   The limitation is explicitly referable only to brothers and sisters dying childless and hence does not affect the shares left to Joshua and William who died leaving children.   Their representatives are therefore entitled to these shares respectively, and only the distribution of the other three shares remains to be considered.

The language of the will in providing for the limitation of these three shares is of doubtful meaning in its application and effect. While the literal sense of the wording of a will prevails in the absence of evidence of some other meaning (*McAllister* v. *Hayes*, 76 N. H. 108, 110), yet here not even the natural import of the words and phraseology is clear.   This uncertainty appears in two aspects.   From a literal viewpoint it is difficult to tell if the testator meant the limitation to take effect upon the death of an unmarried brother or sister. Ann apparently was unmarried when the will was made and did not later marry.   She therefore had no husband to be excluded as her widower from taking her share or some part of it.   In a literal way her share was defeated because she left no children and at the same time it was not defeated because no husband was excluded from it. Again, when the limitation operated, the share affected went to "my" (the testator's) surviving brothers or sisters.   Literally they were all five of them, but thus to define the phrase would mean that the estate of a legatee whose share was defeated would receive some part of the share, a result blocked and barred by the clause excluding

such decedent's surviving spouse. The law gives a surviving spouse an interest in whatever estate the deceased spouse leaves, and it does not make sense that the will indirectly gives what is directly excluded.

The case is therefore one where the meaning and effect of the language used is to be determined in the light of all of the will and of the other competent evidence reported. And the question is one of fact to be established by the ordinary test of a balance of probabilities. See *Fowler* v. *Whelan*, 83 N. H. 453, 458. It is not necessary that there should be freedom from doubt and the balance may be only enough to turn the scales.

In *McAllister* v. *Hayes, supra,* 110, it is said: "The court cannot undertake to make a will for the testator upon the mere conjecture that he may have inadvertently or without full consideration failed to apprehend the force and effect of his language." But when there is reasonable ground for saying what language used inadvertently or not well considered does mean, there is "no exercise of testamentary power" in so interpreting the language as to give it the force and effect it was more probably than otherwise intended to have. As said in *Stevens* v. *Underhill*, 67 N. H. 68, 71: "The general intent of the testator, as gathered from the whole will and other competent evidence, is not to be defeated by language of a doubtful and uncertain meaning, contained in a single clause . . . , nor by technical rules which relate merely to the construction or position of words. . . . On the contrary, effect, if possible, will be given to the main and leading purpose of the testator without laying great stress upon particular expressions or detached clauses . . . and . . . the question of the testator's intention is determined as a question of fact by the natural weight of competent evidence of all kinds, and not by artificial rules of interpretation invented and applied by an exercise of judicial power."

Thus viewed, the will evinces a purpose that the testator's property should go to his family and not outside of it. Except for the negligible bequest of a ring to a nephew, he postponed the distribution of all of his estate so that it would be kept intact and in undivided form until his wife's death ended her life use of it. Providing for its distribution equally among his five brothers and sisters at that time, he took into account the chance of his wife's survival of one or more of them. And in meeting the contingency he distinguished between those meanwhile dying who might and who might not leave children.

The shares of those dying childless were to be defeated. Their surviving spouses were to have no interest therein; and if, as in one

instance, there were none, yet the limitation took effect. The clause in exclusion of a husband or wife is clearly intensive, and not a conditional requirement to make the defeasance operative. The clause is in these words: "to the exclusion of the wife or husband of the one so dying." If any is substituted for "the" before "wife," or if the words if any are read in after "husband," there is no strain even on a technical meaning of the clause and there is only furnished a definite and precise expression of the testator's executed intention. Thus read, the expression discloses both what he meant to do and what he did do.

The more serious contention relates to the actual disposal of a defeated share. Sarah was the first to die of the brothers and sisters who were childless, Ann the next, and Joseph the last. The shares of all three were defeated by their survival by Mary. Sarah's death excluded her husband from any interest in her share. If a part of the share went unconditionally to Ann, then on Ann's death her estate would receive such part through the vesting of title in her, although it would not have the share defeasibly left her. In the same way, if a part of the defeated shares of Sarah and Ann went unconditionally to Joseph, then on his death his widow would have an interest therein, although not in his defeated share.

Results so anomalous and dissociated in coherent purpose are not to be found intended if the language of the will is fairly capable of avoiding them. The testator, excluding Joseph's widow from any part of his defeasible share if Mary outlived him, had every reason of consistency to exclude her from any part of Sarah's and Ann's shares upon their defeasance. And in like reason Ann's estate, not receiving her defeated share, should have no part of Sarah's share. It is therefore to be found that the estates and surviving spouses of childless brothers and sisters predeceasing Mary were to receive nothing at all under the will if it may fairly be so construed. While a person may be as unreasonable and inconsistent as he pleases within the limits of sanity in the testamentary disposal of his property, construction calls for the choice of a reasonable and consistent disposal if the language of the will permits such a choice to be made.

The literal terms of the clause of defeasance were for a defeated share to go to "my" (the testator's) "surviving brothers and sisters." Survival of whom, the testator, the decedent brother or sister whose share became defeated, or Mary, is not stated. As already appears, the clause could not refer to survival of the testator, by reason of the ensuing clause excluding the surviving spouse of such a

decedent brother or sister. Moreover, it is impossible for a person to become the owner of property upon and in the event of his death. If the clause means the brothers and sisters surviving the owner of a share whose death defeated it, then the anomalous and inconsistent result which has been pointed out follows. And the further result follows that the estate of a deceased brother leaving children would receive no part of the defeated share of a subsequently deceased brother or sister. If the clause means survival of Mary, then the result is one of intestacy, since none of the brothers and sisters outlived her. Since all the brothers and sisters survived the testator, the statute (P. L., c. 297, s. 12) enacting that the descendant heirs of a legatee predeceasing the testator shall take the legatee's bequest, has no application or bearing, and the will shows nothing indicating a purpose of devolution to the testator's nephews and nieces of any defeated share upon any contingency. Aside from the more or less established presumption in construing a will that "the law abhors a vacuum," the result of such an intestacy would be a vesting of the shares in part in those whose shares were defeated, since they would be heirs-at-law of the testator, and the clause excluding their surviving spouses from any interest therein would thus be in part nullified.

The result is that any literal and unconditional survivorship is "insensible with reference to external circumstances." And acceptance of such a survivorship is not forced by the suggestion that the testator may not have understood the force and effect of the language of the will and may have failed to contemplate the possibilities which would make its provisions insensible. One is held to contemplate the force and effect of his expressed purpose, whatever it may be in its application. What the language shows he did have in mind and did contemplate is the goal of construction.

And selection among these three possible survivorships is not a necessary conclusion of adoptive and positive construction. With the principle in mind of arriving at the real meaning of the language used, literalness of expression as well as of words may be disregarded, and all three possibilities rejected if the clause may fairly be read to produce a result more natural and normal because more in conformity with the testator's general scheme for the devolution of his property. Complicated phraseology is sometimes used to express simple thoughts, and its translation into simple expression is an ordinary and orderly function and process of construction.

What the testator meant was that a defeated share should lapse and then be added to the shares not defeated. It is fair to say that

the will treats the legatee of a share which becomes defeated as though survived by the testator, the other legatees taking the share.

This construction carries out the testator's wishes as shown by the evidence. However poorly the language used was chosen, it does express the purpose that no childless brother or sister should share in the estate unless actual enjoyment and possession of the share were received. Death before Mary prevented such enjoyment and possession, and hence the share lapsed. Intestacy of a share through its lapse was avoided by the provision for the others described as the survivors to take it. It is not necessary to find a joint tenancy, as in *Fowler* v. *Whelan*, 83 N. H. 453. No difference of treatment among those upon whose shares the limitation operated was intended and their relative survival of each other was of no consequence or effect provided they did not survive Mary. The will shows that the estate goes only to brothers and sisters surviving Mary and to those leaving children although not surviving her. All of it is thus disposed of. Either a survival of Mary or a survival by children was necessary. To the brothers and sisters meeting either condition the estate is given with title vested as of the testator's death. The disposal expresses the thought that such of those named as met the test of one or the other of the conditions should have the estate subject to Mary's life interest. It is found that the testator had this testamentary purpose and set it forth in the will. The words used bear this sense.

The circumstance that the will was drawn by a "practicing lawyer" is not enough to overcome the construction adopted. It may well be that the testator would have done better in expressing himself if he had not undertaken to do so in terms of legal phraseology naturally obscure to him but accepted because of reliance upon the lawyer's implied assurance that they expressed his wishes. A lawyer's mode and manner of expression and exactitude of meaning are not necessarily synonymous. When it is argued that if a certain result were intended, the testator would have declared it or provided for it in clear and simple language, it does not meet the issue. The issue is of translation of obscure into clear expression.

The plaintiff is advised that Joshua's and William's estates are each entitled to one-half of the property to be distributed.

*Case discharged.*

All concurred.