MONONA COUNTY, Trustee for use and benefit of School Fund of the State of Iowa, Appellant, v. PRESTON T. WAPLES et al., Defendants, and J. RAY HUBBARD, Defendant, Appellee.

No. 44786.

JUNE 20, 1939.

Geo. E. Allen, for appellant.

Prichard & Prichard, for appellee.

STIGER, J.—In 1920, Monona county made a loan of $2,500 from the permanent school fund of the State of Iowa to defendants, P. T. Waples and Josephine Waples. They executed a note for $2,500 payable to Monona county in trust for the school fund due in 5 years and to secure the note they executed a mortgage on their 40 acres in Monona county to the county of Monona and the State of Iowa. This school fund mortgage contained the following paragraph:

"And it is expressly agreed that this mortgage is made in accordance with and subject to all the provisions of an act of the Eighth General Assembly of the State of Iowa, entitled, 'An Act Providing for the Management of the School Fund, and of the sale of School Lands,' being Title 12, Chapter 12, of the Code of 1873, and acts amendatory thereto."

On March 5, 1936, the defendant, J. Ray Hubbard, purchased the mortgaged premises at tax sale.

In December 1937, Monona county, as trustee for the use and benefit of the school fund of the State of Iowa, commenced this suit to forclose the school fund mortgage. The petition alleged that Mr. Hubbard's tax sale certificate was junior and inferior to plaintiff's mortgage. Hubbard, who will be referred to as the defendant, filed an answer stating that the land involved in the suit was not school, agricultural college, or university land sold on credit, but was land that was entered and patented in the usual manner; that plaintiff was not the holder of a lien for the unpaid purchase price of the real estate and therefore the lien of plaintiff's mortgage was junior and inferior to the tax lien of the defendant.

The case was submitted to the trial court on an agreed statement of facts. In addition to the above facts it was stipulated that the note and mortgage were the property of the State of Iowa; that the real estate had never been school or university land sold on credit; that defendant paid subsequent taxes on the real estate after his purchase of the tax sale certificate and that the amount necessary to redeem from the tax sale was the sum of $101.64.

The decree entered in the case did not determine the priority of said liens which was the only issue formed by the pleadings or referred to in the statement of facts. The trial court found that it was unnecessary to determine this issue because the equities were with the defendant. The decree granted plaintiff a judgment in foreclosure against all the defaulting defendants but as to the defendant Hubbard it adjudged as follows:

"It is the further order, judgment and decree of the court that the plaintiff, Monona County, as trustee, and the said defendant, J. Ray Hubbard, be, and are, hereby placed in statu quo—that is—in the same position they were in before the purchase of the said tax certificate by the said J. Ray Hubbard, without costs, interest and penalty as to him."

The effect of this order was to require the plaintiff, as trustee of the school fund, to refund to defendant the amount of taxes he had paid Monona county in the sum of $101.64. The county was not a party to the suit.

In finding that the equities of the case appealed to the conscience of the court and were with the defendant, the court stated in the decree that the plaintiff did not demand or attempt

1284

to collect the loan until 11 years after it became due; that the State and its trustee, Monona county, were in fact guilty of laches and negligence; that equity would not permit the State to take advantage of its lack of diligence and attempt to collect its debt from a citizen and taxpayer of the county who purchased the land at tax sale on which the school fund mortgage existed.

Section 3 of the second division of Article IX of the Constitution of the State of Iowa states that the school fund "shall be inviolably appropriated to the support of Common schools throughout the State".

Section 3, Article VII of the Constitution reads:

"Losses to school funds. Sec. 3. All losses to the permanent, School, or University fund of this State, which shall have been occasioned by the defalcation, mismanagement or fraud of the agents or officers controlling and managing the same, shall be audited by the proper authorities of the State. The amount so audited shall be a permanent funded debt against the State, in favor of the respective fund, sustaining the loss, upon which not less than six per cent. annual interest shall be paid. The amount of liability so created shall not be counted as a part of the indebtedness authorized by the second section of this article."

Section 7202, 1935 Code, reads:

"7202. Lien of taxes on real estate. Taxes upon real estate shall be a lien thereon against all persons except the state."

Section 4495, found in chapter 232, 1935 Code, on school funds, reads:

"4495. Statute of limitation. Lapse of time shall in no case be a bar to any action to recover any part of the school fund, nor shall it prevent the introduction of evidence in such an action, any provision in this code to the contrary notwithstanding."

■ A school fund mortgage is State property and, as stated in the early case of Des Moines County v. Harker, 34 Iowa 84:

"The state has recognized its right to the fund, and has

solemnly pledged itself to maintain it intact and inviolate for the purpose to which it has been dedicated."

■ Beginning with the Code Revision of 1860, the legislature has enacted legislation in harmony with the provision contained in all of our codes that taxes upon real estate shall not be a lien against the State and for the purpose of aiding the State in preserving the school fund from loss.

This legislation is found in sections 810 and 811, Revision of 1860; section 900 of the Code of 1873; section 1435, Code of 1897 and section 7268 of the 1924, 1927, 1931 and 1935 Codes.

Sections 810 and 811, Revision of 1860 read:

"Section 810 (1). Be it enacted by the General Assembly of the State of Iowa, That any school or university lands of this state, bought on a credit, whenever the same is sold for taxes, the purchaser at such tax sale shall only acquire the interest of the original purchaser in such lands, and no sale of any such lands for taxes shall prejudice the rights of the state or university therein, or preclude the recovery of the purchase money or interest due thereon.

"Section 811 (2). That in all cases where real estate is mortgaged or otherwise encumbered to the school or university fund of this state, the interest of the person who holds the fee title shall alone be sold for taxes, and in no case shall the lien or interest of the state be affected by any sale of such encumbered real estate made for taxes."

In the Code of 1873, the above two sections are found in section 900.

The headnote to section 1435 of the 1897 Code is "School, agricultural college or university land." The first sentence of section 1435 is substantially the same as section 900, Code of 1873 down to the first semicolon. Beginning with the second sentence, section 1435, 1897 Code, reads:

"In all cases where *the* real estate is mortgaged or otherwise encumbered to the school, agricultural college or university fund, the interest of the person who holds the fee shall alone be sold for taxes, and in no case shall the lien or interest of the state be affected by any sale thereof. The foregoing provision shall include all lands exempt from taxation by law, and any legal or equitable estate therein held, possessed, or claimed for

1286

any public purpose, and no assessment or taxation of such lands, nor the payment of any such tax by any person, or the sale and conveyance for taxes of any such lands, shall in any manner affect the right or title of the public therein, or confer upon the purchaser or person who pays such taxes any right or interest in such land." (Italics supplied.)

Subsequent Codes contain substantially the same provisions as section 1435, 1897 Code.

Prior to the adoption of the 1897 Code( this court, in construing section 900 of the Code of 1873 and sections 810 and 811 of the Revision of 1860, held without exception that the lien of a mortgage given the State for the purchase price of school land bought on credit and the lien of a real estate mortgage to the school fund were paramount to a tax lien. See La Rue v. King, 74 Iowa 288, 37 N. W. 374; Winnebago County v. Brones, Admr., 68 Iowa 682, 28 N. W. 15; Ayres v. Adair County, 61 Iowa 728, 17 N. W. 161; Lovelace v. Berryhill, 36 Iowa 379; Miller v. Gregg, 26 Iowa 75; Helphrey v. Ross, 19 Iowa 40; State v. Shaw, 28 Iowa 67; Jasper County v. Rogers, 17 Iowa 254; Crum v. Cotting, 22 Iowa 411.

In the case of State v. Shaw, supra, the court, in referring to section 811 of the Revision of 1860, states:

"This provision exempts lands so mortgaged from tax sales that will divest the lien of such mortgage, and the purchasers at the sales only acquire the right to redeem from the mortgage."

This is the first time this court has been called on to construe section 1435, 1897 Code, and the corresponding sections in our subsequent codes.

We are of the opinion that we should construe section 1435 of the 1897 Code and the corresponding sections of the subsequent codes in precisely the same manner as the court construed section 900 of the 1873 Code and sections 810 and 811 of the Revision of 1860.

It will be observed that the second clause of said section 900 reads:

"And in all cases where real estate is mortgaged or otherwise encumbered to the school or university fund" etc.

The second sentence in section 1435, 1897 Code, reads:

"In all cases where *the* real estate is mortgaged or otherwise encumbered to the school, agricultural college or university fund" etc.

Appellee argues that because of the headnote to section 1435, "School, agricultural college or university land", and the addition of the word "the" before the words "real estate" in said section, that the legislature intentionally omitted a mortgage to the school fund from the protection of said section and that said section refers only to security given for the purchase price of school land sold on credit and that under the provisions of said section and the corresponding sections in the subsequent codes, the lien of the State under its school fund mortgage is inferior to a tax lien and a certificate of sale to the mortgaged land. We do not agree with appellee's contention. The headnote to section 1435 is not a part of the law enacted and is not to be considered in construing the statute. Section 49, 1935 Code. We are of the opinion that the words *"the real estate"* occurring in the second sentence of section 1435, 1897 Code, refers not only to school land sold on credit but also to real estate mortgaged to the school fund, that is, we hold that section 1435 includes the same real estate that is included in section 900 of the 1873 Code and sections 810 and 811 of the Revision of 1860.

While it is important to the State, when school land is sold on credit, to recover the purchase price so that it may be placed in the school fund, it is equally vital to protect and preserve the school fund, after the proceeds of the sale of school land are placed therein, from loss which is, under the Constitution, "a permanent funded debt against the State" in favor of the fund.

In enacting section 1435 of the 1897 Code, the legislature clearly made a mortgage, given for the purchase price of school land sold on credit, paramount to a tax lien. We think it equally clear that the legislature, especially in view of the policy of the State to preserve the school fund intact, also intended to give a mortgage to the school fund the same priority, and did not intend to abrogate said policy. This construction is in harmony with the provisions contained in all the codes that taxes upon real estate are not a lien against the State. We think the intention of the legislature to include mortgages in favor of the

school fund in section 1435 is manifested by the following language found in said section:

"The foregoing provision shall include all lands exempt from taxation by law, and any legal or equitable estate therein held, possessed, or claimed for any public purpose, and no assessment or taxation of such lands, nor the payment of any such tax by any person, or the sale and conveyance for taxes of any such lands, *shall in any manner affect the right or title of the public therein, or confer upon the purchaser or person who pays such taxes any right or interest in such land.*" (Italics supplied.)

We hold that the lien of plaintiff's school fund mortgage is superior to defendant's tax sale certificate.

■ II. Defendant did not plead the defense of laches or negligence and there is no evidence in the record to sustain such defense. Furthermore, prior to his purchase at tax sale, the defendant was in no position to complain of the delay in the collection of the mortgage. When he purchased the tax sale certificate, he was charged with knowledge of plaintiff's rights under its school fund mortgage and that it was unpaid. We are unable to perceive any prejudice to the defendant after he purchased the certificate that would make it inequitable to enforce plaintiff's rights.

■ But there is a more impelling reason why the decree in favor of the defendant cannot be permitted to stand. The relief afforded defendant is based in part on laches and negligence of the plaintiff in collecting the debt.

Code section 4495, 1935 Code reads:

"4495. Statute of limitation. Lapse of time shall in no case be a bar to any action to recover any part of the school fund, nor shall it prevent the introduction of evidence in such an action, any provision in this code to the contrary notwithstanding."

The above statute is in harmony with the doctrine that the defenses of laches and negligence are not available against the State in a suit brought to enforce a public interest or right. New Amsterdam Casualty Company v. Albia State Bank, 214 Iowa 541, 239 N. W. 4, 242 N. W. 538.

The suit in foreclosure is to enforce a public right.

■ With reference to the tax sale, the decree states:

"May the State under these circumstances foist on the purchaser a debt double the value of the land involved? As the school fund mortgage was of record the court finds that while the parties had constructive notice of the mortgage and are presumed to know the law, yet at tax sales—for with few exceptions taxes are prior liens—few pay attention to the title; that there was a mutual mistake here to say the least; that Mr. Hubbard bought something he did not know he was buying and did not intend to buy, and the State, through the County Treasurer, sold something it had no intention of selling, to wit, the mortgage on the land or rather the land subject to the mortgage."

The court apparently refers to the provision in sections 1435, 1897 Code and 7268, 1935 Code, that "in all cases where the real estate is mortgaged or otherwise incumbered to the school, agricultural college, or university fund, the interest of the person who holds the fee shall alone be sold for taxes."

If there was a mutual mistake, it was not between the parties to this suit. It was stipulated in the agreed statement of facts that defendant "purchased said premises at a duly and legally advertised tax sale held by the Treasurer of Monona County, Iowa." Defendant's sole claim in the lower court was that his tax sale certificate was superior to plaintiff's mortgage because it was not a purchase price mortgage but was a mortgage to the school fund. He has not questioned the legality of the tax sale but has relied on it to sustain his case.

The fact that the treasurer of Monona county may have exceeded his authority and sold "more than the interest of the person who holds the fee," would not affect the priority of the lien of the school fund mortgage. The mortgage was of record, the tax on the real estate was not a lien against the State and said sections 1435 and 7268 provide that "in no case shall the lien or interest of the state be affected by any sale thereof [the real estate]. * * *. No assessment or taxation of such lands, nor the payment of any such tax by any person, or the sale and conveyance for taxes of any such lands, shall in any manner affect the right or title of the public therein, or confer upon the purchaser or person who pays such taxes any right or interest in such land."

The decree should have adjudged that the lien of plaintiff's mortgage was superior to the lien of the defendant Hubbard who acquired as against the plaintiff, under his tax sale certificate, only the right to redeem from plaintiff's mortgage.

The case is reversed and remanded for a decree of foreclosure against defendant.—Reversed and remanded.

MITCHELL, C. J., and SAGER, MILLER, HALE, HAMILTON, and BLISS, JJ., concur.