JOHNSON COUNTY, Executor, Appellee, v. EDWARD L. O'CONNOR, Executor, et al., Appellants.

No. 45953.

JUNE 16, 1942.

Edward L. O'Connor and Hayek & Jensen, for appellants.

W. J. Jackson, Byington & Rate, and Edward F. Rate, for appellee.

HALE, J.—The mortgage in question was on an outlot in Iowa City, and was executed by Frances A. Freeman on January 8, 1913, to secure her note in the principal sum of $600, and was made and delivered to Johnson County for the use and benefit of the school fund. Interest was 5 per cent, payable annually, and the note matured on January 8, 1918. Interest was paid to and including the year 1933. Frances A. Freeman died testate March 3, 1936, and Edward L. O'Connor was appointed executor of her estate and has been so acting ever since. No claim was filed against the estate on this note and mortgage. The will directed the executor to sell all of decedent's real and personal property and to pay the proceeds thereof to her children in accordance with her specific bequests. On May 20, 1938, the executor entered into a real-estate contract of sale for the premises described in the mortgage to one D. J. Gatens. The school-fund mortgage

was not shown on the abstract of title. The testatrix, Frances A. Freeman, was 87 years old at the time of her death, and was unable to transact any business for a year or more prior to her death. Her only surviving children were Florence O'Connor, Ray Freeman, and Elmer Freeman. Elmer Freeman was living in Iowa City and died on October 13, 1940. None of these children is shown to have known of the existence of this school-fund note and mortgage until June or July 1939. On June 29, 1938, a probate deed, duly approved by the court, was executed by Edward L. O'Connor to the purchaser D. J. Gatens, and there was paid thereon by D. J. Gatens the sum of $655. The proceeds of the sale were distributed to the beneficiaries under the will in July 1938, under order of court. The estate is still open and is solvent. Suit on the mortgage in controversy was commenced on April 25, 1940. The defense was that the mortgage lien ceased to exist on January 8, 1933, which was 20 years after its execution and more than 10 years after its maturity, under the provisions of section 11028 of the Code, and also because of the provisions of sections 10990-g1 to 10990-g3, Code of 1935. On June 27, 1941, judgment and decree established the plaintiff's lien and awarded the plaintiff judgment in rem against the property in the sum of $810.99 with interest, but no personal judgment was rendered against any of the defendants. From this judgment and decree of the court, defendants appeal.

The foregoing are the facts set out by the defendants and as to which plaintiff states there is no controversy. There are, however, some additional facts. Mrs. Freeman's daughter Mae died about a year before her mother died, leaving as her sole heir her mother. This daughter had been employed in the county auditor's office for about 20 years prior to 1935. Some of the entries showing payment of interest on the Freeman mortgage were in the handwriting of Mae Freeman, and it would seem that she had been paying interest on the mortgage and necessarily understood that it had not been paid.

Before considering the objections of the defendants to the decree of the district judge, we may note some of the Code provisions relative to the statute of limitations. The general Code section as to limitations is section 11007, of which paragraph 6 is as follows:

"Written contracts—judgments of courts not of record—recovery of real property. Those founded on written contracts, or on judgments of any courts except those provided for in the next subsection, and those brought for the recovery of real property, within ten years."

The special statute of limitations upon which plaintiffs rely is section 4495, Code of 1939. In its present form it has been substantially the same since the Acts of the Ninth General Assembly (1862), chapter 148, section 13:

"Statute of limitation. Lapse of time shall in no case be a bar to any action to recover any part of the school fund, nor shall it prevent the introduction of evidence in such an action, any provision in this code to the contrary notwithstanding."

Code section 11028, in part, is as follows:

"Foreclosure of ancient mortgages. No action shall be maintained to foreclose or enforce any real estate mortgage, bond for deed, trust deed, or contract for the sale or conveyance of real estate, after twenty years from the date thereof, as shown by the record of such instrument, unless the record of such instrument shows that less than ten years have elapsed since the date of maturity of the indebtedness or part thereof, secured thereby * * *."

The rest of the section refers to extensions of the maturity of the instrument, and date of maturity when different than as appears by the record of the instrument in the form of extension agreements which are not involved in the present action. Sections 10990-g1, 10990-g2, and 10990-g3, Code of 1935 (now sections 10990.1, 10990.2, and 10990.3, Code of 1939), merely permit the state to be made a party in any suit or action which is now pending or which may be brought in any district court in Iowa, and refer to the method of service in such actions, and state that the state should have the same standing as other defendants in the same action. These provisions merely render it possible in an action in court conveniently to allow the rights of the state as to real estate to be determined. No right of the state is settled by these Code provisions, or surrendered, except the sovereign privilege not to be sued.

It is assigned as error, the holding of the court that the mortgage lien is still a valid and existing lien. Defendants argue that section 11028, which became a law a long time after section 4495, should prevail over section 4495, as it is also a special limitation. We cannot agree with the defendants as to this contention. However sweeping in its provisions section 11028 may be, we cannot think that it will operate as a repeal of section 4495. Certainly there is no express repeal, and we cannot say that there was a repeal by implication when the earlier section has the provision, "any provision in this code to the contrary notwithstanding." The design of this later statute, section 11028, was undoubtedly to prevent the provisions of the general limitations statute in regard to minors and insane persons, who are excepted from the general limitations statute, to interfere with or to cause flaws to embarrass and injure future owners of real estate. And the effect of Newgirg v. Black, 174 Iowa 636, 645, 156 N. W. 708, 711, was to limit these possible claimants under the provisions of ancient documents affecting the ancient interests of land. It is true that section 11028 is a special limitation, and it is also true that the special limitations prevail over a general limitation, but section 4495 is also a special limitation referring only to one particular kind of mortgage, the school-fund mortgage. The holding of Newgirg v. Black indicates clearly what the purpose of section 11028 was:

"Under that section [referring to the general limitations statute], a mortgage was barred in 10 years from its maturity, unless the time was extended by a written promise to pay under Code Section 3456; or the general exception in favor of minors and insane persons under Code Section 3453; or the general exception against nonresidents under Code Section 3451; or the general exception in case of the death of the holder under Code Section 3454. Such being the case, there was no necessity for providing a special statute that mortgages should be barred in 10 years, unless it was intended to make that a general law, without regard to minority and without regard to the residence of mortgagor or death of the holder. Section 3447-c provides an exception where there is a new promise. So it is manifest, we think, that Section 3447-c, if it has any meaning, must apply,

regardless of the minority of the holder and of the nonresidence of the mortgagor, or of the death of the holder.''

Section 3447-c is the same as section 11028. The defendants argue that this decision squarely holds that section 11028 of the Code takes precedence over all other former statutes. We do not so construe it. None of the statutes referred to in the excerpt quoted contain any such provisions as that contained in the limitation of school-fund mortgages, and a subsequent statute in conflict with provisions of such other statutes would work a repeal. But we do not think such statute would so apply to the provisions in regard to limitation of school-fund mortgages since section 4495 expressly holds that no provision of the Code shall operate to limit the time in which action shall be brought on that class of mortgages. Section 4495 has all the effect of an exception to section 11028 for the reason that it carries with it its own declaration that no provision of the statute should alter or affect its provisions. This provision negatives any idea of a repeal by implication by the enactment of the subsequent statute, and it has many times been determined that repeals by implication are not favored. To avoid the effect of section 4495 it seems that nothing but an express repeal would be effective.

Defendants argue that the state is embarking in business when it loans money for gain and profit, and cite various authorities which indicate that unless the state is acting in its sovereign capacity the general rules apply as to an individual, and the limitation statutes can be enforced against it as against such individual for the reason that the state thereby divests itself of its sovereign character and is subject to the statute. This assertion is not disputed any more than the proposition that the statute of limitations does not run against the county, as has often been held by this court. Brown & Sully v. Painter, 44 Iowa 368; Harrison County v. Dunn, 84 Iowa 328, 51 N. W. 155; Payette v. Marshall County, 180 Iowa 660, 163 N. W. 592; State v. Henderson, 40 Iowa 242. But the state is not engaged in a merely mercenary or money-loaning business when it takes action as a party to protect its school fund, which belongs to the state and is protected by the Constitution. The provisions of section 3, Article VII of the Iowa Constitution, expressly state that any losses to the school fund shall be a permanent funded debt against the

state. In other words, the constitution protects this school fund and prohibits its depletion in any way.

Cases cited by the defendants in support of their contentions, we do not think support such contentions. We may briefly note some of the cases. Monast v. Manley, 228 Iowa 641, 293 N. W. 12, merely reiterates what has often been held by the court before, that the general statute of limitations outlawed a mortgage lien 10 years after the note became due. Defendants cite this case as showing that the legislature had something else in mind than cutting off mortgage liens held by private parties 10 years after their maturity. Also Payette v. Marshall County, supra. The language of the court in this later case only indicates that the statute of limitations may run against a county. Judge Weaver in his opinion in the Payette case, 180 Iowa 660, 662, 163 N. W. 592, 593, states:

"Though the State for some reason made itself a party to the case by intervention, it fails to allege or suggest a single fact, except to say it is interested in the matter in controversy with the defendants and against the plaintiffs. Nor is any attempt made in argument to enlighten the court on that subject, and we think the case is to be treated and disposed of precisely as it would have been had the intervention not been made."

And the opinion further states:

"* * * a judgment in a case of that nature and the money collected thereon do not belong to the state, but to the county, for the use of its temporary school fund."

This is very apparent since the action was not brought to foreclose a mortgage or recover a debt due to the school fund but to recover a fine imposed upon the plaintiff, which necessarily would not become a part of the permanent school fund but belonged to the county.

Defendants emphasize some of the language in section 11028, such as that "No *action* shall be maintained to foreclose or enforce *any* real estate mortgage," and devote considerable time to a number of citations which hold that the word *any* is all-inclusive and means *all*. This is no doubt true in cases where the words apply. But we do dispute, and we do hold that the

20-years' provision of section 11028 cannot apply to school-fund mortgages guarded as they are by the express provisions of section 4495. Defendants also devote considerable time and present an able argument in relation to the rights of innocent third parties. But our recording laws are for the protection of innocent third parties who may deal in real estate or attempt to acquire rights therein, and these recording statutes are part of the laws of the state; and the record of the mortgage, executed under the provisions of the statute, and of which mortgage the statutes necessarily are a part, is on file for all to see. We do not think it necessary to review all the citations or any large number of cases cited by the defendants. Most of them refer to the principles about which there can be no dispute, and since the only question at issue is one of limitations, the only issue is whether or not section 4495 was affected by the subsequently adopted section 11028. We do not think that it was.

We are also of the opinion that the matter has been settled by us contrary to the defendants' contention, under the principles set out in our recent case of Monona County v. Waples, 226 Iowa 1281, 286 N. W. 461, which announced the same rule as had previously been stated in Hamilton County v. Chase, Iowa 152 N. W. 580, decided in 1915. Justice Stiger, by whom the opinion in the Waples case was written, reviews the history and objects and purposes in regard to the provisions regarding the school funds, referring, in addition to the provision of the Constitution heretofore mentioned, to section 3 of the second division of Article IX of the Constitution of the State of Iowa, wherein it is stated that the school fund shall be inviolably protected for schools throughout the state. And the opinion noted refers to section 4495 above. The general holding of this opinion is that the statute under consideration is in harmony with the doctrine that the defenses of laches and negligence are not available against the state in a suit brought to enforce a public interest or right. In this case, even the holder of a tax lien was held to be charged with the knowledge of the state's lien and that it was unpaid and that he could not rely on lapse of time, laches, or negligence, as against the state, although the time at which it was attempted to collect the mortgage was 11 years after due. We are of the opinion that the rule announced in the Waples

case, supra, applies to this case, and that, under the provisions of the statute exempting action on school-fund mortgages from the provisions of the statute of limitations, the limitation of section 11028 does not apply to actions to recover on the school fund.

As stated, the only question before the court is whether the limitation as to ancient mortgages applies to school-fund mortgages, and it is our holding that the mortgage in controversy was not subject to the limitations of section 11028, and the cause should therefore be, and is, affirmed.—Affirmed.

BLISS, C. J., and SAGER, MILLER, GARFIELD, STIGER, WENNERSTRUM, and OLIVER, JJ., concur.