Estate of Nettie M. Adams, John Q. Adams, Sr., William P. Adams, II, and John Q. Adams, Jr., Executors v. Commissioner.
Estate of Adams v. Commissioner
Docket No. 57478.
United States Tax Court
T.C. Memo 1957-246; 1957 Tax Ct. Memo LEXIS 4; 16 T.C.M. (CCH) 1130; T.C.M. (RIA) 57246; December 31, 1957
*4 Held: No part of the value of the Iowa real property involved is includible in the gross estate of the decedent, Nettie M. Adams, under the provisions of Section 811(c)(1), I.R.C. of 1939. Calvin F. Selfridge, Esq., 120 West Adams Street, Chicago, Ill., and Sheldon Lee, Esq., for the petitioner. Andrew Kopperud, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This case involves a deficiency in Federal estate tax determined by the respondent in the amount of $212,282.75. Robert B. Adams, Sr., and John Q. Adams, Sr., were the original executors of the petitioner herein. Pursuant to a motion filed at the hearing it was ordered that William P. Adams, II, and John Q. Adams, Jr., successor executors, be substituted as executors in the place of Robert B. Adams, Sr. (now deceased). Some of the adjustments have been settled by the parties by stipulation; others are not in dispute. The only issue remaining for decision is whether the value of certain Iowa real estate is includible in decedent's estate under section 811(c)(1), Internal Revenue Code of 1939. Findings of Fact The stipulated facts, together with attached exhibits, are found as facts and included *5 herein by this reference. Nettie M. Adams (sometimes hereinafter referred to as decedent) died on March 6, 1951, a resident of Dade County, Florida. Her will was admitted to probate in the County Judges' Court of that county. Decedent's two sons, Robert B. and John Q. Adams, were appointed executors of her estate by said court. As Executors of the Will of Nettie M. Adams they filed a Federal estate tax return for her estate with the collector of internal revenue at Jacksonville, Florida. Respondent has included certain Iowa real estate in the decedent's gross estate. Such real estate is as follows: (a) An undivided one-third (1/3) in-
terest in fee in 5,784.96 acres of
farm land in Sac County, Iowa
$404,947.20
(b) An undivided one-third (1/3) in-
terest in fee in Lots 30 and 31 in
Block 13, Wheeler's Second Ad-
dition to the Town of Odebalt
1,666.67 The 5,784.96 acres of farm property and lots 30 and 31 above referred to were owned in fee by William P. Adams, husband of the decedent, at the time of his death on March 24, 1937. He also owned valuable commercial real estate in Chicago and a considerable amount of corporate stocks. William P. Adams died a resident of Dade County, Florida, leaving *6 a will dated February 2, 1915, and a codicil dated November 24, 1920, which were admitted to probate in Dade County. The will and apparently the codicil were drafted by a member of a firm of Chicago attorneys and were executed in Chicago, Illinois. At the time of the execution of the instruments William was a resident of Florida. Said will, after providing for payment of debts and taxes and disposing of certain personal property, provided as follows: * * *
"FOURTH: I give, devise and bequeath unto my said wife, Nettie M. Adams, all the rest and residue of my property and estate, wherever located and whether now owned or hereafter acquired (the same being sometimes hereinafter for brevity referred to as "residuary estate"), as Trustee and in trust, for and upon the following terms, trusts and conditions, to wit: "(a) In trust, to hold, manage, care for, administer, invest and reinvest said residuary estate, according to her best judgment and as she may see fit, for the period of five (5) years from the date of my death." * * *
After providing for the management of the trust and the payment of specific bequests out of the property contained therein it was further provided as follows: "(j) *7 In trust, to turn over, convey and transfer to my two sons, John Q. Adams and Robert B. Adams, equally, share and share alike, all of the remainder of said residuary estate and any accumulations thereof, in absolute ownership, immediately upon the expiration of said five (5) years from the date of my death; provided, however, that, and it is my will that, my son Robert shall have and receive, as part of his said share of said residuary estate and any accumulations thereof, my farm and farm lands located in Sac County, Iowa, together with all the tools, machinery, farm animals, horses, mules and cattle of all kinds, harness, wagons, automobiles and all other equipment and personal property located on said farm lands or used in operating the same, at an appraisement and valuation to be made and fixed by my said wife; and provided further, that such conveyance of the trust real estate, wherever located, shall be subject to the dower and dower rights of my wife in all of the same; the intent being, and it is my will, that her dower and dower rights in all of my real estate, wherever located, shall be reserved and preserved to my said wife." * * *
The codicil referred to above, in pertinent *8 part, provided as follows: "THIRD: Whereas, by sub-paragraph (j) of Paragraph Fourth of my said Last Will and Testament, I directed that the remainder of my residuary estate, and any accumulations thereof, under said Last Will and Testament, shall be divided between my two sons, John Q. Adams and Robert B. Adams, equally, share and share alike, at the expiration of five (5) years from the date of my death, provided that my son Robert shall have and receive, as part of his share thereunder, my farm and farm lands located in Sac County, Iowa, together with all the farm equipment and personal property located thereon; and whereas, as the years go by, my said farm lands will increase or decrease in value, and the ratio of their value to the value of the remainder of my estate will change, and whereas, my son Robert has given his entire time to the management of said farm lands, and I desire him to have the whole of the same after my death, I therefore now direct specifically that if the value of my said farm and farm lands, together with the tools, machinery, grain, farm animals, horses, mules and cattle of all kinds, harness, wagons, automobiles and all other equipment and personal property *9 located on said farm lands or used in operating the same shall be less than the value of one-half of my residuary estate and any accumulations thereof, under said sub-paragraph (j), then and in such case my son, Robert, shall receive in addition to said personal property and equipment used in connection therewith, a further amount of my said residuary estate sufficient to make his total share of said residuary estate equal to my son John's share of the same; but if the value of said farm and farm lands and grain and all of said personal property and equipment used in connection therewith shall be greater than the value of one-half of my said residuary estate under said subparagraph (j), then and in such case my son, Robert, shall nevertheless receive as his share of my said residuary estate the whole of said farm and farm lands and grain and all of said personal property and equipment used in connection therewith, and my son, John, shall receive as his share the balance of my said residuary estate. The valuation and appraisement of my said residuary estate and of said farm and farm lands and grain and personal property and equipment used in connection therewith shall be made by my *10 dear wife, Nettie M. Adams. If my said wife should not be in life at the expiration of said five (5) year period from the date of my death, said valuation and appraisement shall be made by my said two sons, and in the event that for any reason they shall not be able to agree on a valuation mutually satisfactory, I direct that they select one of the vice-presidents of The Merchants Loan and Trust Company of Chicago to make said valuation and appraisement, in which event his decision shall be final and conclusive upon the beneficiaries hereunder. The valuation and appraisement in this paragraph provided for shall be made at the expiration of five (5) years from the date of my death." * * *
After the death of his father Robert B. Adams, as Iowa executor for his father's estate, filed in the District Court of Iowa in and for Sac County an application for construction of the will of his father. This application was filed on or about August 31, 1937, and provided in part as follows: * * *
"This petitioner shows to the Court that there is sufficient personal property on hand and in the possession of the Executrix, Nettie M. Adams, appointed in the Primary jurisdiction, to wit, the State of *11 Florida to pay all specific legacies more particularly set forth in said Will and Codicil thereto. "That there will come into the hands of the Trustee named in said Will sufficient personal assets to permit the payment of all devises and bequests provided for in said Last Will and Testament. "That the only parties interested in the Iowa real estate are the widow, Nettie M. Adams, both personally and as Trustee, a son John Q. Adams and a son Robert B. Adams who is this petitioner and is the same person named as Executor in the State of Iowa. * * *
"That there is apparent conflict between the said provisions in said Will with reference to said trust estate and the provisions in said Codicil with reference to the Iowa farm lands, in that if the said Iowa real estate and farm lands are a part of the said trust estate the said devisee thereof, to wit, Robert B. Adams would not acquire the same after the death of the said testator but would only secure possession thereof five years from the date of death of said testator. "That this petitioner as devisee of the Iowa farm lands has entered into an operating agreement with the widow, Nettie M. Adams wherein it was agreed that in the event the *12 court construes and interprets the Will and Codicil thereto to give possession of the Iowa real estate to the said Robert B. Adams at the expiration of the year of Iowa probate with the valuation of the same for purpose of final distribution of said trust estate to be made five years from the date of death of said testator, then in such event the said Iowa farm lands owned by said decedent at the time of his death and real property owned by Nettie M. Adams individually would be operated under an agreement whereby the said Robert B. Adams would finance the said operation of said farm lands and the said Nettie M. Adams as long as she lives would receive one-third of the net income received from said operation. * * *
"The said Nettie M. Adams, John Q. Adams and Robert B. Adams being the only parties having an interest in and to said Iowa real estate have agreed that the intent of the testator was that the said Robert B. Adams should take possession of said Iowa real estate following the year of administration thereof, subject only to the valuation to be placed upon said premises five years from the date of death of said testator and believe that this would be the proper construction and *13 the true interpretation of said Codicil. "That the said parties in interest believe that it is for the best interests of said estate and especially for the best interest of the widow, Nettie M. Adams, that said construction be given and entered of record and said operating partnership agreement thereby be given full force and effect. "That accompanying this application for construction is the written request of Nettie M. Adams, widow and John Q. Adams and Robert B. Adams, sons and residuary legatees of said decedent, joining in this application and requesting this construction. "WHEREFORE, this petitioner prays that the court will make and enter an order fixing time and place of hearing upon this application and that upon said hearing that the said court will construe said will and will make and enter an order specifically interpreting the said will and defining the intention of the testator as expressed therein in so far as it relates to the Iowa real estate." Robert B. Adams, John Q. Adams, and Nettie M. Adams each filed in the proceeding in the District Court a document entitled Consent and Joinder to Construction of Will. In such documents the parties prayed that the court would *14 construe and interpret the will in accordance with the construction suggested in the Application for Construction of Will. On August 31, 1937, the date on which said application and consents were filed, the District Court entered an order setting the matter for hearing on September 14, 1937, and proper notice of such hearing was duly made. The court appointed a guardian ad litem, J. B. Tourgee, for John Q. Adams, Jr., and the other grandchildren of William P. Adams, all of whom were minors. A document entitled Answer of Guardian Ad Litem was filed in the District Court on September 14, 1937. A hearing was had on the Application for Construction of Will on September 14, 1937, and a decree was entered by the court on that day. The pertinent part of such decree is as follows: "The Court further finds that Nettie M. Adams, widow, John Q. Adams and Robert B. Adams, sons, and residuary legatees of said estate being the only parties interested herein excepting for the specific bequests of said decedent, have all executed and filed of record verified consent and joinder wherein they join in the application for the construction of said Will and Codicil as is more particularly set forth in said *15 application on file and of record. "The Court having fully examined said Will and said Codicil and having heard the arguments of counsel and being now fully advised in the premises finds: "That it was the intent of the testator that the Iowa farm and farm lands were to be devised to Robert B. Adams at the expiration of the period of Iowa probate and further finds that it was not the intent of the testator that the said Iowa farm and farm lands should become a part of the trust more particularly set forth in paragraph Fourth of said will. "The Court further finds that for the purpose of making division of the residuary estate at the termination of the trust more particularly set forth in paragraph Fourth of the Will of said decedent, that the valuation to be placed upon the Iowa farm land was to be the value at the expiration of five years from the date of death of said testator. "It is therefore ordered, adjudged and decreed, that the will of said testator is hereby construed and interpreted to will, devise and bequeath unto Robert B. Adams all of the Iowa real estate and farm lands more particularly described as follows, to wit: * * *
subject only to the administration thereof by the *16 Iowa courts and it is specifically ordered that at the expiration of the year of probate and in any event not later than June 1, 1938, the said above described Iowa farm and farm lands shall be turned over and delivered to the said Robert B. Adams with the valuation for the purpose of making division of the residuary estate to be made as is more particularly set forth in said will, five years from the date of death of said testator." Nettie M. Adams did not renounce said will or exercise any election to take property from William P. Adams in any manner permitted by the statutes of the states of Florida, Iowa or Illinois permitting such renunciation or election. Nettie M. Adams, as Trustee under the Will of William P. Adams, executed and delivered a Trustee's Deed of the Iowa farm to Robert B. Adams by an instrument dated March 24, 1942, and recorded April 26, 1945. Nettie M. Adams individually executed a quitclaim deed of the Iowa farm to Robert B. Adams by an instrument dated March 24, 1942, and recorded April 26, 1945. John Q. Adams and Corinne H. Adams executed a quitclaim deed of the Iowa farm to Robert B. Adams by an instrument dated March 24, 1942, and recorded April 26, 1945. *17 The partnership agreement referred to in the application for construction was in effect from its date until the date of death of Nettie M. Adams, a period of over thirteen years. Pursuant to said agreement, Nettie M. Adams received during her lifetime as her share of the profits of said farm, according to the books and records of the partnership, the following amounts: May 31, 1938 (Loss of $ 887.33 * )
none
May 31, 1939 (Loss of 62,788.81 * )
none
May 31, 1940
$ 7,517.60
May 31, 1941
7,890.14
May 31, 1942
14,528.12
May 31, 1943
10,052.05
May 31, 1944
24,280.40
May 31, 1945
5,392.02
May 31, 1946
20,859.14
May 31, 1947
55,502.27
May 31, 1948
74,366.18
May 31, 1949
22,676.37
May 31, 1950
36,737.33
Mar. 6, 1951
34,943.08
Total
$314,744.70
From June 1, 1937 to March 6, 1951, Robert B. Adams, pursuant to the provisions of the operating partnership agreement with Nettie M. Adams, made additions to buildings and equipment in the amount of $288,321.41. When the partnership was formed in 1937, neither partner contributed any capital to it. No capital account was set up on the books. From time to time during the partnership hogs, cattle, and other livestock were purchased by money contributed *18 by the partners, one-third by Nettie M. Adams and two-thirds by Robert B. Adams. Also from time to time, the partnership purchased insurance, some policies for three years and some for five years. The cost was contributed one-third by Nettie M. Adams and two-thirds by Robert B. Adams. The contributions for livestock and for insurance were set up on a capital account, which capital account on March 6, 1951, the date of death of Nettie M. Adams, contained two items: Livestock
$52,802.14
Prepaid Insurance
9,410.27 The interests in these items were Nettie M. Adams one-third and Robert B. Adams two-thirds. Opinion The ultimate issue to be determined in this case is whether a one-third interest in fee in certain real property situated in the State of Iowa is to be included in the gross estate of the decedent under the provisions of section 811(c)(1) of the Internal Revenue Code of 1939. [1] *19 Respondent's position is that decedent received a one-third fee simple interest in the property involved under the terms of the will of her husband, William P. Adams, upon his death in 1937, and that thereafter she and the members of her family entered into certain arrangements whereby she transferred her one-third fee interest in the Iowa farm to her son, Robert B. Adams, and retained *20 for her life the right to receive and enjoy one-third of the net income from said farm. The arrangements complained of include: (1) the procurement from the District Court of Iowa in and for Sac County of an allegedly non-contested consent and untenable construction of the will of William P. Adams whereby, in effect, Nettie's one-third fee interest in the Iowa farm was transferred to her son, Robert; (2) a partnership agreement entered into between Nettie and Robert whereby Nettie retained for her life one-third of the net income from the Iowa farm; and (3) Nettie latter excuted deeds transferring the Iowa farm to Robert. Petitioner's position is that the decree of the state court construing the will of William P. Adams is binding on this Court for the purpose of imposing Federal estate taxes, and also that, properly construed, the will of William P. Adams did not give Nettie a fee interest in his Iowa real estate. In the alternative, assuming Nettie did receive a one-third fee interest, petitioner contends that she receive an adequate and full consideration for her alleged transfer of such interest. The parties agree that the Iowa law applies to the testamentary disposition of the *21 Iowa real property involved herein. Estate of Wallace S. Howell, 28 T.C. , decided September 24, 1957; Tyler v. United States, 281 U.S. 497; Freuler v. Helvering, 291 U.S. 35. The parties do not agree, however, as to what the applicable law of Iowa is. Petitioner's first contention is that the decree of the Iowa state court construming the will of William P. Adams as devising all of the Iowa real estate and farm lands to Robert B. Adams is binding on this Court for the purpose of imposing Federal estate taxes. In view of our conclusion, hereinafter discussed, with respect to petitioner's second contention, however, it is not necessary for us to resolve this question in the instant case. Petitioner argues that, properly construed, the will of William P. Adams did not give to Nettie a fee interest in the Iowa real estate. Consideration of this contention of petitioner necessitates a determination of what, if any, interest in the Iowa real property involved herein the decedent, Nettie M. Adams, received under the will of her husband, William P. Adams. This involves the interpretation and construction of the will of William P. Adams executed February 2, 1915, particularly that portion *22 wherein, after devising and bequeathing his residuary estate to Nettie, in trust for a period of five years, he directed that at the end of such period she convey and transfer to his two sons, John Q. Adams and Robert B. Adams, "equally, share and share alike, all of the remainder (after payments of certain specific bequests) of said residuary estate and any accumulations thereof, in absolute ownership," provided that Robert should receive as part of his share the "farm and farm lands located in Sac County, Iowa," at an evaluation to be fixed by Nettie: "* * * and provided further, that such conveyance of the trust real estate, wherever located, shall be subject to the dower and dower rights of my wife in all of the same; the intent being, and it is my will, that her dower and dower rights in all of my real estate, wherever located, shall be reserved and preserved to my said wife." By a codicil, executed November 24, 1920, the testator provided that in the event the value of the Iowa farm lands should be less than one-half the value of the residuary estate and accumulations at the time of distribution Robert should receive, in addition to the farm lands and personal property, a further *23 amount of the residuary estate sufficient to make his share equal to John's, but if the value of such lands and property was greater than one-half the residuary estate, Robert should nevertheless receive as his share "the whole of said farm and farm lands." The purpose of this codicil was to ensure that the Iowa farm and farm lands should be included in Robert's share and no part thereof should go to John. It did not alter or change the testator's previously emphasized intent that "her dower and dower rights" in all of his "real estate, wherever located" should be "reserved and preserved" to his wife. Our principal problem, therefore, is to determine what the testator meant or intended by the use of the terms "dower" and "dower rights." Respondent argues that under Iowa law the term "dower" means a one-third fee interest in real property. Petitioner's position is that the word "dower" has no definite technical meaning in Iowa but is to be construed in the light of all the provisions of the will and surrounding circumstances and that when so construed, as used here, it means a life estate in one-third of the real estate. We agree with petitioner. Iowa originally adopted the common law *24 concept of dower, that is, a one-third life estate. In 1851, this was enlarged to a one-third fee simple estate, but in the following year, 1852, Iowa reverted to the one-third life estate. In 1862, the Iowa General Assembly established a "distributive share" of one-third in fee and specifically abolished the estate of curtesy. Section 2440 of the Iowa Code of 1873 (enacted by the legislature in toto) provided for a one-third distributive share in fee and specifically abolished the estates of both curtesy and dower. This section appeared as a part of Chapter 4, relating to "The Descent and Distribution of Intestate Property," and was as follows: "SEC. 2440. One-third in value of all the legal or equitable estates in real property, possessed by the husband at any time during the marriage, which have not been sold on execution or any other judicial sale, and to which the wife has made no relinquishment of her right, shall be set apart as her property in fee-simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband. All provisions made in this chapter in regard to the widow of a deceased husband, shall be applicable to *25 the surviving husband of a deceased wife. The estates of dower and curtesy are hereby abolished." Substantially the same language, except that the last sentence thereof was omitted, appeared in all subsequent statutes of Iowa, as section 11990 of the Code of 1935 and section 636.5 of the Iowa Code of 1954. The Code of 1873 contained no headnote on "Dower," but in each of the subsequent codes the catchword or headnote "Dower" appears after the number and preceding the body of the section. In this connection, it is to be noted that under Iowa law neither headnotes placed at the beginning of a section of a bill, nor historical references at the end, are a part of the law as enacted and are not to be considered in construing the statute. Section 3.3 of the Iowa Code of 1954 (Section 49 of earlier Codes); Monona County v. Waples, 226 Ia. 1281, 286 N.W. 461. Unquestionably, had William died intestate, Nettie would have been vested with a one-third fee simple interest in his Iowa lands immediately upon his death. Also, had she so chosen, Nettie could have elected to take the distributive share provided for her by the Iowa statute. But William did not die intestate and Nettie did not elect *26 to take under the statute. On the contrary, by the filing of her Consent and Joinder in the state court proceedings she chose to abide by the will. Thus, we are not concerned with what her statutory distributive share was but what she received as a devise. Respondent argues that although the estate of dower has been abolished by statute in Iowa, the profession and the courts have continued to use the word "dower" to mean the estate prescribed by the statute, citing In re Dluhos' Estate, 246 Iowa 1043, 70 N.W. 2d 549; Daugherty v. Daugherty, 69 Iowa 677, 29 N.W. 778; and others. We have carefully examined these and other Iowa cases [2] in which dower has been discussed but are unable to find therefrom that the Iowa courts have established as an absolute rule that a devise of an interest described as dower is to be construed in all cases as a devise of an interest equivalent to the statutory interest provided by the statute mentioned above. The Dluhos case, supra, is the only Iowa case which has come to our attention which involved the construction of the word dower, when used in a will to describe an interest devised. In that case the will gave to the surviving husband "his dower right *27 according to the laws of Iowa." [Italics by the Iowa Court]. It did not specify or define or refer to the interest otherwise. The court construed this provision as having the effect of placing him in the same position as if there were no provisions made for him in the will, i.e. entitled to one-third of the real estate free from debts and expenses, and with the right, at his election, to take instead a life estate in the entire homestead. In so holding, the court said: * * *
"Our prime concern and object, of course, is to discover and carry out the true intent and plan of the testatrix, and to carry it into effect as nearly as possible. * * *
"* * * Of course dower, in the original common law sense, has been abolished in Iowa, but we continue in practice to use the word as meaning the right to the statutory distributive share which the surviving spouse receives. In that statutory distributive share is the right of election already mentioned. Common law 'dower' itself was the portion of or interest in real estate which was given the widow for life. "Thus we feel that where the term is used, as here, without any indication by testatrix of a contrary intent, we should construe it in the *28 broad sense as including the survivor's right to take his share in such manner as he might elect under the law. * * *
"It may be conceded here that this interpretation of the word 'dower' is somewhat broader than is usually indulged, but we are here seeking testatrix' intent as well as the usual meaning thereto attached." * * * It is clear from the language used in the Dluhos case that when the word "dower" is used to describe a devise in Iowa, it is ordinarily considered to be the statutory interest of the surviving spouse. It is not to be determined as such arbitrarily, however, but may be interpreted otherwise in order that effect may be given to the intent of the testator. In Iowa, as elsewhere, the cardinal rule in the construction of wills is to determine the intention of the testator. In re Dluhos' Estate, supra; In re Chadwick's Estate, 247 Iowa 1050, 78 N.W. 2d 31; In re Longer's Estate, 108 Iowa 34, 78 N.W. 834, 75 Am. St. Rep. 206. *29 It is also the general rule that a will is to be construed as a whole and that effect should, if possible, be given to all parts of the will. Jensen v. Nelson, 236 Iowa 569, 19 N.W. 2d 596; In re Miller's Estate, 243 Iowa 920, 54 N.W. 2d 433. A will takes effect at the death of a testator. However, the intention of the testator, which is the controlling factor in construing the will, is the intention he had when the will was executed. Also, the surrounding circumstances, which must be taken into consideration in determining what the words of the will mean and how they are to be applied, are the circumstances which existed at the time of the execution of the will and which were known to the testator. Page on Wills, vol. 2, sec. 938; Luitjens v. Larson, 222 Iowa 1320; 271 N.W. 239. See also La Rocque v. Martin, 344 Ill. 522, 176 N.E. 734; Moffet v. Cash, 346 Ill. 287, 178 N.E. 658. In the instant case the testator was born and resided for most of his life in Illinois, where the common law concept of dower, a one-third interest for life, prevailed. [3] Testator owned considerable commercial real estate in Chicago. He moved to Florida about 1915 and owned real estate in that state. *30 The common law concept of dower also prevailed in Florida at that time and continued to be the law of Florida until 1935, when it was enlarged to one-third fee simple interest. [4] Testator was presumably more familiar with the concept of dower in the states of his domicile, which was also the common law concept and the usual and popular meaning of dower at the time he executed his will in 1915 and the codicil in 1920. As stated in Page on Wills, section 933, where a testator uses words which have a definite and well understood technical meaning, the prima facie presumption is that he intended to use them in that sense, unless it plainly appears from the context that another meaning was intended. Campbell v. Dunkelberger, 172 Iowa 385, 153 N.W. 56. Where, however, a word has a popular meaning and *31 a technical meaning it will be presumed that the popular meaning was intended. The context of the will may show that even technical words were used in some meaning other than that which is technically correct. Cf. Warden v. Overman, 155 Iowa 1, 135 N.W. 649, where other provisions of the will and surrounding circumstances were held to establish that the word "heirs" was not used in its technical or strict legal meaning. Considering the will as a whole and the surrounding circumstances, it is our conclusion that in using the word "dower" and "dower rights" herein testator intended the meaning attributed to them at common law and by the statutes of Florida and Illinois, that is, a one-third interest for life, rather than a one-third fee simple interest as provided by the Iowa statute for the descent and distribution of intestate property. This is evident from the directions in the will that, at the termination of the five year trust period, "all of the remainder" of his residuary estate should be conveyed to his two sons, John and Robert, "equally, share and share alike, * * * in absolute ownership" and that Robert should receive "my farm and farm lands located in Sac County, Iowa." *32 Testator's concern that Robert should receive "the whole" of the Iowa farm lands was emphasized by the provisions in the codicil that Robert should receive the Iowa farm and farm lands even though they should exceed in value one-half the value of the residuary estate. To hold that by the use of the words "dower" and "dower rights" testator meant a one-third fee simple interest would obviously defeat the testator's intention that Robert should receive the whole of the Iowa farm lands since he could, under such interpretation, receive only a two-thirds fee interest in such property. We also think it evident that the testator intended John and Robert to receive similar interests in the respective properties to be conveyed to them. Under Illinois law John received the Illinois real property in fee subject to a life estate in Nettie. This was recognized and carried out by the parties as shown by the deed (Ex. 24-X) which Nettie as trustee executed to John on March 24, 1942. As pointed out in Page on Wills, section 1113, where the nature of an estate is in doubt, the context may indicate that a life estate is intended, by giving estates in other property which are clearly life estates, and *33 which are apparently intended to be of the same nature as the first estate. Cf. Swaim v. Swaim, 284 Ill. 105, 119 N.E. 939. The fact that the will and codicil were drafted by a practicing attorney in Illinois does not overcome the construction we have adopted. While it might be presumed that a practicing attorney would use legal terms such as "dower" and dower rights" in their strict legal sense according to the laws of each state in which the lands devised were located, we think it more probable that they were used here according to the meaning with which the attorney was most familiar, that is, as applied in Illinois and at common law. Obviously the ambiguity and difficulty of construction of the will herein might have been obviated by more careful draftsmanship. As was observed by the court in Marvin v. Peirce, 84 N.H. 455, 152 Atl. 484: "* * * It may well be that the testator would have done better in expressing himself if he had not undertaken to do so in terms of legal phraseology naturally obscure to him but accepted because of reliance upon the lawyer's implied assurance that they express his wishes. A lawyer's mode and manner of expression and exactitude of meaning are *34 not necessarily synonymous. Where it is argued that, if a certain result were intended, the testator would have declared it or provided for it in clear and simple language, it does not meet the issue. The issue is of translation of obscure into clear expression." Considering the will and codicil as a whole along with the surrounding circumstances we hold that the decedent, Nettie M. Adams, did not receive a one-third fee interest in the Iowa farm and farm lands under the will of William P. Adams, but at most a life estate in one-third thereof and accordingly, no part of the value of said farm and farm lands is includible in the gross estate of Nettie M. Adams, under the provisions of section 811(c)(1) of the Internal Revenue Code of 1939. This construction also conforms to the practical construction placed on the will by all of the parties interested therein more than thirteen years before the Federal estate tax question involved herein arose. In view of the above holding, consideration of petitioner's alternative argument is unnecessary. Decision will be entered under Rule 50. Footnotes
*. Losses assumed by Robert B. Adams.↩
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(c) Transfers in Contemplation of, or Taking Effect at, Death. - (1) General rule. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise - (A) in contemplation of his death; or (B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or (C) intended to take effect in possession or enjoyment at or after his death. * * *↩
2. Ward v. Wolf, 56 Iowa 465, 9 N.W. 348; In re Proctor's Estate, 103 Iowa 232, 72 N.W. 516; Leighton v. Leighton, 193 Iowa 1299, 188 N.W. 922; Prichard v. Anderson, 224 Iowa 1152, 278 N.W. 348; In re Kees' Estate, 239 Iowa 287, 31 N.W. 2d 380., In re Finch's Estate, 239 Iowa 1069, 32 N.W. 2d 819↩.
3. Hurd, Revised Statutes 1913 and 1919, Chapter 41, sections 1 and 38. See also Illinois Revised Statutes, 1935, chapter 41, sections 1 and 38. ↩
4. Florida Compiled Laws Annotated, 1914, Vol. 2, section 2306; Revised Statutes of Florida 1920, Vol. 2, section 3629; Compiled General Laws of Florida 1927, section 5493; Florida Acts of 1935, Chapter 17, 171, amending section 35 of Chapter 16, 103.↩